2012 CO 4

**COLORADO MILLS, LLC, a Colorado limited liability company, Plaintiff**

v.

**SUNOPTA GRAINS AND FOODS INC., a Minnesota corporation, f/k/a Sunrich LLC, and Colorado Sun Oil Processing LLC, a Colorado limited liability company, Defendants.**

No. 11SA82.

Supreme Court of Colorado, En Banc.

Feb. 6, 2012.

Snell & Wilmer L.L.P., Michael E. Lindsay, Jessica E. Yates, Eugene P. Kim, Denver, Colorado, Attorneys for Petitioner SK Food International.

Kissinger & Fellman, P.C., Paul D. Godec, Denver, Colorado, Attorneys for Petitioner/Party–in–Interest Adams Vegetable Oil, Inc.

Kutak Rock LLP, Thomas W. Snyder, Jeremy D. Peck, Denver, Colorado, Attorneys for Respondent SunOpta Grains and Foods Inc.

Justice EID delivered the Opinion of the Court.

¶ 1 In this original proceeding under C.A.R. 21, we consider whether a Colorado court has the authority to enforce a civil subpoena that was issued by an arbitrator against an out-of-state nonparty.

¶ 2 In an arbitration proceeding between respondent SunOpta Grains and Foods Inc. ("SunOpta") and Colorado Mills, LLC ("Colorado Mills"), an arbitrator, at SunOpta's request, issued subpoenas to petitioners SK Food International ("SK Food") and Adams Vegetable Oil, Inc. ("Adams"). SK Food and Adams are not parties to the underlying arbitration. Neither company is incorporated in Colorado, is registered as a foreign corporation in Colorado, or maintains its principal office in Colorado. The subpoenas, which requested business records, were served on SK Food and Adams at their

places of business in California and North Dakota.

¶ 3 When SK Food and Adams refused to comply with the arbitration subpoenas, SunOpta asked the district court to enforce them. The district court issued an order enforcing the subpoenas, and in response SK Food and Adams filed a petition for a rule to show cause, which we issued.

¶ 4 We have long held that Colorado courts, as a matter of state sovereignty, have no authority to enforce civil subpoenas against out-of-state nonparties. *See Solliday v. Dist. Court,* 135 Colo. 489, 499, 313 P.2d 1000, 1005 (1957). Instead, such enforcement, if any, is left to the states in which the discovery is to take place. *Id.* Because the district court had no authority to enforce the subpoenas in question, we vacate its enforcement order, make the rule absolute, and remand the case to the district court for further proceedings consistent with this opinion.

**I.**

¶ 5 In the case underlying this petition, Colorado Mills filed an action in Prowers County district court against SunOpta concerning a joint venture. The district court, in accordance with an arbitration agreement, ordered that the case be arbitrated.[1]

¶ 6 SunOpta asked the arbitrator to issue subpoenas to SK Food and Adams seeking documents. SunOpta claimed that it required information from SK Food and Adams about the pricing of sunflower oil, contending that it could not compile the relevant pricing information from other sources. SK Food and Adams are not parties to the arbitration. Neither SK Food nor Adams is incorporated in Colorado, is registered as a foreign corporation in Colorado, or maintains its principal office in Colorado. The arbitrator issued the subpoenas, which were served on SK Food and Adams at their places of business in

California and North Dakota. SK Food and Adams—customers of Colorado Mills and direct competitors of SunOpta—refused to comply with the subpoenas.

¶ 7 When SK Food and Adams refused to comply with the subpoenas, SunOpta sought an order from the district court to enforce them. SK Food and Adams argued, *inter alia,* that the district court did not have the power to enforce the subpoenas against out-of-state nonparties. The district court granted SunOpta's motion and ordered SK Food and Adams to comply with the subpoenas. The district court held that it had jurisdiction to enforce the subpoenas based on Colorado's version of the Revised Uniform Arbitration Act, and that it had personal jurisdiction over both SK Food and Adams under the Colorado long-arm statute.

¶ 8 Following the court's order, SK Food and Adams, as parties-in-interest, filed a petition for a rule to show cause pursuant to C.A.R. 21, which we issued.

■ ¶ 9 We have long held that Colorado courts, as a matter of state sovereignty, have no authority to enforce civil subpoenas against out-of-state nonparties. *See Solliday,* 135 Colo. at 499, 313 P.2d at 1005. Instead, such enforcement, if any, is left to the states in which the discovery is to take place. *Id.* Because the district court had no authority to enforce the subpoenas in question, we vacate its enforcement order, make the rule absolute, and remand the case to the district court for further proceedings consistent with this opinion.

**II.**

¶ 10 The district court concluded that Colorado's version of the Revised Uniform Arbitration Act and the Colorado long-arm statute gave it authority to enforce the arbitration subpoenas against SK Food and Adams, both out-of-state[2] nonparties. We find that neither of these sources of law

---

1.  As the court compelling arbitration, the district court retains jurisdiction over the case. However, the arbitrator's decisions are final, subject to the limitations set forth in Colorado's version of the Revised Uniform Arbitration Act, sections 13–22–201 to –230, C.R.S. (2011).

2.  For the purposes of this opinion, we intend the term "out-of-state" to mean a nonresident who is not found within the state. We express no opinion on whether a nonresident nonparty served a civil subpoena while in Colorado may, as a result of such in-state service, become subject to a Colorado court's subpoena power.

provided the district court with the authority to enforce the subpoenas in question and that enforcement, if any, must come from the jurisdictions in which the discovery is to take place.

¶ 11 Colorado's version of the Revised Uniform Arbitration Act provides that an arbitrator "may permit such discovery as the arbitrator decides is appropriate in the circumstances, taking into account the needs of the parties to the arbitration proceeding and other affected persons...." § 13–22–217(3), C.R.S. (2011). If an arbitrator permits discovery, she may "issue subpoenas for the attendance of a witness and for the production of records and other evidence" at any hearing or discovery proceeding, including from nonparties. § 13–22–217(4); *see also* § 13–22–217(1). The question here is whether a Colorado court may enforce such a subpoena against a nonparty who is out-of-state.

■ ¶ 12 Section 13–22–217(1) does not expressly address the issue of enforcing subpoenas against out-of-state nonparties. However, the act does provide that a subpoena "shall be served in the manner for service of subpoenas in a civil action and, upon motion to the court by a party to the arbitration proceeding or by the arbitrator, *enforced in the manner for enforcement of subpoenas in a civil action.*" § 13–22–217(1) (emphasis added). The language of section 13–22–217(1) thus confines the district court's enforcement authority in the arbitration context to that degree of authority it would possess "in a civil action." Accordingly, we reject any suggestion that the act gives a court greater authority to enforce civil subpoenas against out-of-state nonparties simply because the parties agreed to arbitrate. A district court has the same authority to enforce subpoenas in civil actions regardless of whether arbitration is involved or not.

¶ 13 We have long held that Colorado courts, as a matter of state sovereignty, have no authority to enforce civil subpoenas against out-of-state nonparties. In *Solliday,* for example, we held that an out-of-state nonparty "could not ... be forced by a Colo-

rado court either to submit to the taking of his deposition [in another state] or to produce [documents]." 135 Colo. at 499, 313 P.2d at 1005. We observed that "recognition ... given our laws or court orders by other states is based solely upon full faith and credit, comity, ... uniform acts, or compact." *Solliday,* 135 Colo. at 498, 313 P.2d at 1004. We concluded that enforcement of the Colorado subpoenas in question "must be sought in the ... courts" of the state in which the nonparty resided. *Solliday,* 135 Colo. at 499, 313 P.2d at 1005. Significantly, we concluded that both C.R.C.P. 28, relating to the taking of depositions outside of the state, and C.R.C.P. 45, relating to the civil subpoena power, were subject to the "implied limitations of mutual compact or uniform act." *Solliday,* 135 Colo. at 498, 313 P.2d at 1004.

¶ 14 We reaffirmed *Solliday* in *State of Minnesota ex. rel. Minnesota Attorney General v. District Court,* 155 Colo. 521, 525–26, 395 P.2d 601, 603 (1964), where we held that the Colorado district court could not enforce a subpoena against a Minnesota nonparty. More recently, we relied upon the principles expressed in *Solliday* in *People v. Arellano–Avila,* 20 P.3d 1191, 1194 (Colo.2001), where we held that a Colorado court had no authority to order that a criminal·deposition be taken in a foreign country.

■ ¶ 15 SunOpta contends, and the district court apparently agreed, that the limitations set forth in *Solliday* and reaffirmed in *State of Minnesota* and *Arellano–Avila* do not apply, given that Colorado courts possess extraterritorial jurisdiction under the state's long-arm statute. § 13–1–124, C.R.S. (2011). We are not convinced.

¶ 16 We begin by noting that the language of the long-arm statute subjects resident and non-resident persons who have engaged in an enumerated act within Colorado to the "jurisdiction of the courts of [Colorado] concerning any cause of action arising from [the enumerated acts]." § 13–1–124. Here, however, SunOpta's subpoenas do not "concern[ ] any cause of action arising from" an act committed by SK Food or Adams. Therefore the long-arm statute does not apply.[3]

---

**3.** We also disagree with SunOpta's argument,

based on *Isis Litigation, L.L.C. v. Svensk Filmin-*

¶ 17 Nor have we found any authority applying our long-arm statute, or the long-arm statute of any other state for that matter, to enforce a civil subpoena against an out-of-state nonparty.[4] On the contrary, other states, like Colorado, have held that enforcing civil subpoenas against out-of-state nonparties is left to the state in which the discovery is sought.[5]

¶ 18 We also note that, if SunOpta were correct, there would be no need for uniform acts to enforce civil subpoenas against out-of-state nonparties, as a state's long-arm statute would accomplish the task. Yet Colorado and other states recently adopted the Uniform Interstate Depositions and Discovery Act ("UIDDA"), which provides a mechanism for parties litigating in one state, the "trial state," to issue a subpoena to a nonparty in another state, the "discovery state." UIDDA §§ 1–9, 13II U.L.A. 64–69 (Supp.2011); see §§ 13–90.5–101 to –107, C.R.S. (2011). Colorado's version of the UIDDA is not directly controlling in this case, as it governs how a Colorado court would enforce a "foreign subpoena" issued in another state for discovery within Colorado. § 13–90.5–103. However, the principles behind it are instructive.

¶ 19 Under the UIDDA, a subpoena issued in the "trial state" for discovery in the "discovery state" must be submitted to the clerk

---

*dustri,* 170 P.3d 742 (Colo.App.2007), that the district court had authority to enforce the subpoenas in this case because the subpoenas may have been properly served on each corporation's out-of-state registered agent pursuant to C.R.C.P. 4. The problem with this argument is that invoking a court's subpoena power through service of the subpoena is different than the subpoena power itself. *See, e.g.,* 16 *Moore's Federal Practice* § 108.01(2)(c) (3d ed. 2011) ("The process of invoking jurisdiction by service of process is distinct from the requirement of a jurisdictional basis[,]" therefore, "the fact that proper service was made does not mean that the court may exercise jurisdiction over the defendant."). Here, we are concerned with the subpoena power itself, not the procedures for invoking that power.

4. *See, e.g., First Am. Corp. v. Price Waterhouse LLP,* 988 F.Supp. 353, 362 n. 4 (S.D.N.Y.1997) ("[T]he reach of [New York's] long-arm jurisdiction appears to be limited to non-domiciliary defendants[;] [r]esearch yields no example of long-arm jurisdiction being imposed on a nonparty witness in order to obtain discovery."), *aff'd on other grounds,* 154 F.3d 16 (2d Cir.1998); *Phillips Petroleum Co. v. OKC Ltd. P'ship,* 634 So.2d 1186, 1188 (La.1994) ("Whereas the long-arm statute extends Louisiana's personal jurisdiction over persons or legal entities beyond Louisiana's borders, there is no similar authority for extending the subpoena power of a Louisiana court beyond state lines to command in-state attendance of [out-of-state] nonparty witnesses."); *Syngenta Crop Prot., Inc. v. Monsanto Co.,* 908 So.2d 121, 127 (Miss.2005) (finding no statutory authority that would allow the court to compel an out-of-state nonparty to appear in a Mississippi case or produce documents located outside of the state); *Craft v. Chopra,* 907 P.2d 1109, 1111 (Okla.Civ.App.1995) (finding no statutory authority in either the Oklahoma Pleading Code or the Oklahoma Discovery Code contemplating subpoenas compelling extra-territorial discovery from out-of-state nonparties); *see also*

Ryan W. Scott, *Minimum Contacts, No Dog: Evaluating Personal Jurisdiction for Nonparty Discovery,* 88 Minn. L. Rev. 968, 984 (2004) ("Most states retain strict limits on the reach of the subpoena power, holding that subpoena service cannot reach nonparties found outside the state."); Rhonda Wasserman, *The Subpoena Power: Pennoyer's Last Vestige,* 74 Minn. L. Rev. 37, 39 (1989) ("Regardless of the distance between the witness and the courthouse, the amount of contact the witness has within the state, or the need for live testimony, the states uniformly and steadfastly have refrained from exercising extraterritorial subpoena power."). *Compare Silverman v. Berkson,* 141 N.J. 412, 661 A.2d 1266, 1276 (1995) (although the state's rules of civil procedure prohibited a court from issuing a subpoena to out-of-state nonparties, through statute the legislature authorized the Bureau of Securities to issue such subpoenas in connection with a securities investigation, which could be enforced by the state's courts with the expectation of full faith and credit from other states).

5. *See, e.g., In re Nat'l Contract Poultry Growers' Ass'n,* 771 So.2d 466, 469 (Ala.2000) (to serve a subpoena for the attendance of a witness or production of documents located out-of-state requires "the existence of a rule or statute in the other state or country which makes available compulsory process to foreign litigants who desire to return to their home state for trial with the fruits of discovery thus obtained" (quoting 1 Champ Lyons, Jr., *Alabama Rules of Civil Procedure Annotated* § 45.2 (3d ed. 1996))); *Rahofy v. Steadman,* 245 P.3d 201, 205 (Utah App.2010) (discussing how to subpoena documents in other jurisdictions), *cert. granted,* 251 P.3d 245 (Utah 2011); *Am. Online, Inc. v. Nam Tai Elec., Inc.,* 264 Va. 583, 571 S.E.2d 128, 132–33 (2002) (discussing principles of comity and statutory authority and permitting discovery within Virginia for a California case).

of court in the discovery state, at which time the clerk re-issues the subpoena within the discovery state. UIDDA § 3, 13II U.L.A. at 65; § 13–90.5–103. The subpoena itself must comply with the law of the discovery state, UIDDA § 5 cmt., 13II U.L.A. at 67; § 13–90.5–105, and enforcement of the subpoena is left to the discovery state, UIDDA § 6, 13II U.L.A. at 67; § 13–90.5–106; *see also* § 13–90.5–106 cmt. (noting that nothing limits a party from applying for "appropriate relief" in the trial state, including "[a]pplications to the court that affect only the parties to the action"). While states that have adopted the UIDDA may permit the direct issuance of a subpoena by a clerk of court in the discovery state, others may follow different procedures, including requiring the issuance of letters rogatory from the trial state.[6] Whatever the case, the bottom line is that enforcement of civil subpoenas against out-of-state nonparties is left to the state in which the discovery is to take place.[7]

¶ 20 SK Food and Adams make two additional arguments challenging the subpoenas issued in this case: that the information sought is a privileged trade secret and therefore not discoverable, and that the subpoenas issued here violate C.R.C.P. 45 on the ground that they seek documents only.[8] Because we

find that the subpoenas are not enforceable by a Colorado court, we decline to address these additional arguments.

### III.

¶ 21 For the foregoing reasons, we vacate the enforcement order of the district court, make the rule absolute, and remand the case to the district court for further proceedings consistent with this opinion.

---

**6.** "Letters rogatory," also known as letters of request, are documents issued by a court in the trial state to a court in the discovery state, requesting that the discovery-state court take evidence from a person within the discovery state and return the evidence to the trial-state court for use in a pending case. *Black's Law Dictionary* 988 (9th ed. 2009). We note that a Colorado district court is authorized to send letters rogatory under C.R.C.P. 28.

**7.** Similarly, when the discovery state has enacted the Revised Uniform Arbitration Act, courts in the discovery state are authorized to enforce subpoenas from an arbitrator in the trial state. Revised Unif. Arbitration Act (2000), § 17(g), 7IA U.L.A. 61 (2011); § 13–22–217(7).

**8.** C.R.C.P. 45 provides that subpoenas may be issued "to compel attendance of witnesses, with or without documentary evidence, at a deposition, hearing or trial." We have stated that this rule "does not permit a person to subpoena documents by themselves; rather, [documents] may be sought only in connection with a subpoena for a deposition." *In re Attorney E.*, 78 P.3d 300, 305 (Colo.2003) (internal citation omitted). It is unclear whether a foreign document-only

subpoena could be re-issued within Colorado under Colorado's version of the UIDDA. *Compare* § 13–90.5–103 (requiring a clerk of a Colorado court, upon receipt of "foreign subpoena," to "promptly issue a subpoena for service"), *and* § 13–90.5–102(5)(b) (defining "subpoena" as any document "issued under authority of a court of record requiring a person to," *inter alia*, "[p]roduce and permit inspection and copying of designated books [and] documents"), *with* § 13–90.5–105 (requiring any subpoenas issued under section 13–90.5–103 to comply with Colorado law). There is a similar issue under the Revised Uniform Arbitration Act. *Compare* § 13–22–217(1) (requiring arbitration subpoenas to be "enforced in the manner for enforcement of subpoenas in a civil action"), *and* § 13–22–217(7) (requiring subpoenas issued in other states to be "enforced in the manner provided by law for enforcement of subpoenas in a civil action"), *with* § 13–22–217(7) (stating that a Colorado court "may enforce a subpoena ... for the production of records ... in connection with an arbitration proceeding in another state"). This issue is not directly presented today because, as noted above, we are not faced with a subpoena issued by a court of another state. We therefore do not address it.