2015 CO 1

**TULIPS INVESTMENTS, LLC, Petitioner**

v.

**STATE of Colorado EX REL. John W. SUTHERS, Attorney General for the State of Colorado; and Julie Anne Meade, Administrator, Uniform Consumer Credit Code, Respondents.**

**Supreme Court Case No. 12SC996**

Supreme Court of Colorado.

January 12, 2015

**1128**

Attorneys for Petitioner: Jones & Keller, P.C., Edward T. Lyons, Jr., Denver, Colorado.

Attorneys for Respondents: John W. Suthers, Attorney General, Paul Chessin, Senior Assistant Attorney General, Denver, Colorado.

Attorneys for Amicus Curiae Colorado Department of Regulatory Agencies: John W. Suthers, Attorney General, Russell B. Klein, First Assistant Attorney General, Denver, Colorado.

Attorneys for Amici Curiae State of Wyoming and Thirty-five Other States: Peter K. Michael, Wyoming State Attorney General Travis J. Kirchhefer, Senior Assistant Attorney General, Cheyenne, Wyoming.

JUSTICE HOBBS delivered the Opinion of the Court.

¶ 1 At issue in this case is judicial enforcement of an administrative investigatory subpoena for documents of a corporation located outside of Colorado that is suspected of conducting business within Colorado in violation of its two leading consumer protection statutes.[1] Tulips Investments, LLC ("Tulips") is

---

1. We granted certiorari in *State ex rel. Suthers v. Tulips Investments, LLC*, 2012 COA 206, 343 P.3d 977 to review the following issues:

  1. Whether the court of appeals erred in holding that the district court had jurisdiction to order petitioner to comply with an administrative subpoena that was served upon Petitioner in Delaware, requiring petitioner to produce documents at the office of the Attorney General in Colorado or face punishment for contempt.
  2. Whether the court of appeals erred in holding that the Uniform Interstate Depositions and Discovery Act, C.R.S. §§ 13–90.5–101 *et seq.*, does not provide a means by which the production of the documents sought by the subpoena could have been obtained with the assistance of a Delaware court.

a Delaware corporation the State of Colorado contends is conducting a loan business within the State of Colorado in violation of the Uniform Consumer Credit Code (the "UCCC" or the "Code"), §§ 5–1–101 *et seq.*, C.R.S. (2014), and the Colorado Consumer Protection Act (the "CCPA"), §§ 6–1–101 *et seq.*, C.R.S. (2014). UCCC section 5–6–106(1), C.R.S. (2014), authorizes the Code's Administrator to investigate alleged violations of that statute and issue subpoenas in aid of the State's investigation. Likewise, CCPA section 6–1–107(1), C.R.S. (2014), and section 6–1–108(1), C.R.S. (2014), authorize Colorado's Attorney General to investigate alleged violations of that statute and issue subpoenas in aid of the State's investigation.

¶ 2 Through these statutorily authorized officers, the State issued an investigatory subpoena requesting various documents from Tulips. When Tulips failed to produce the documents, the State sought and obtained a trial court order enforcing the administrative subpoena under UCCC section 5–6–106(3) and CCPA section 6–1–109(1). Through a Delaware deputy sheriff, the State served upon Tulips' registered agent in Delaware both the administrative subpoena and the trial court's order enforcing it. When Tulips ignored the trial court's enforcement order, the State pursued a contempt citation against Tulips for failure to comply, also served by a Delaware deputy sheriff. Tulips responded by filing a C.R.C.P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. The trial court granted this motion, citing our decision in *Solliday v. District Court*, 135 Colo. 489, 313 P.2d 1000 (1957), for "general subpoena enforcement principles" preventing the court and the government from exercising subpoena authority beyond Colorado's boundaries.

¶ 3 The State appealed. The court of appeals conducted a statutory construction analysis. It concluded that the UCCC authorized the State to issue the investigatory subpoena, and the trial court had authority to enforce it. Having made this conclusion, the court of appeals found it unnecessary to analyze the CCPA subpoena issue. We agree. We hold that the trial court has subject matter jurisdiction in this administrative subpoena enforcement action. In enacting the UCCC, the General Assembly conferred administrative subpoena issuance authority upon the UCCC Administrator and authorized the trial court to enforce such a subpoena against a nonresident who is alleged to have violated the Code and has refused to obey a subpoena. In so holding, we distinguish our decisions in *Solliday* and *Colorado Mills, LLC v. SunOpta Grains & Foods Inc.*, 2012 CO 4, 269 P.3d 731. Both of those cases addressed a limitation under C.R.C.P. 45 restricting service of a subpoena in civil actions to areas located within the State. Neither case involved the special statutory procedure the General Assembly enacted under the UCCC for issuance of administrative investigatory subpoenas and trial court enforcement of them. This statute applies equally to resident and nonresident persons suspected of conduct violating its provisions.[2] Accordingly, we affirm the court of appeals' judgment setting aside the trial court's C.R.C.P. 12(b)(1) order of dismissal.

## I.

¶ 4 In December 2009, the Administrator of the UCCC (the "Administrator") received a complaint from an elderly Colorado couple alleging that Tulips, doing business under the name Cash Banc, made them a car loan of $1,640.50 over the Internet at a high interest rate (365% per annum). The couple also alleged that Tulips automatically debited money from their checking account every two weeks, causing their account to be overdrawn. Based on this complaint, the Administrator concluded that Tulips was likely violating the UCCC by making loans to Colorado consumers without being licensed under the statute.

¶ 5 On January 21, 2010, the Administrator sent Tulips a cease-and-desist advisory re-

---

**2.** The court of appeals assumed that Tulips "would be considered a 'nonparty' under C.R.C.P. 45, because a civil complaint has not been filed." *Tulips Invs., LLC,* ¶ 12. However, the court went on to point out that Tulips is the target of the investigatory inquiry, and the question in this case is one of statutory interpretation akin to the analysis of authority we employed in *Colorado Mills. See id.* at ¶¶ 13–17.

garding its allegedly unlicensed lending activity. As part of its investigation, the Administrator also directed Tulips to provide a complete list of all loans it made to Colorado consumers. Tulips did not comply. Instead, Tulips responded that Colorado law was inapplicable to it—a Delaware corporation with no offices or agents in Colorado—and that the State of Colorado had no jurisdiction over it. The Administrator again requested the information in a letter dated June 23, 2010. Once more, Tulips declined to provide the requested information.

¶ 6 Based upon the consumer complaint, additional information obtained by the Administrator, and Tulips' responses to the information requests, the Administrator found reasonable cause to believe Tulips had made loans without being licensed under the statute and charged excessive finance charges in violation of the UCCC. Similarly, Colorado's Attorney General concluded that, by making supervised loans without the required governmental license, Tulips had engaged in deceptive trade practices in Colorado in violation of the CCPA.

¶ 7 On September 22, 2010, through a Delaware deputy sheriff, the State served upon Tulips' registered agent in Delaware a subpoena ordering the company to produce various documents relating to the State's investigation. When Tulips failed to comply with the subpoena, the State applied for and obtained an ex parte order from the trial court to enforce the subpoena. On October 28, 2010, through a Delaware deputy sheriff, the State served the enforcement order on Tulips' registered agent in Delaware. When Tulips again failed to comply, the State initiated contempt proceedings against it. On May 6, 2011, through a Delaware deputy sheriff, the State served the contempt citation on Tulips' registered agent in Delaware. In response, Tulips filed a motion to dismiss under C.R.C.P. 12(b)(1), alleging that the trial court lacked subject matter jurisdiction to enforce the subpoena against it.

¶ 8 The trial court granted Tulips' C.R.C.P. 12(b)(1) motion, concluding the court lacked subject matter jurisdiction to enforce the out-of-state subpoena based upon general subpoena enforcement principles articulated in *Solliday* and the availability of a remedy in Delaware courts through the Uniform Interstate Depositions and Discovery Act (the "UIDDA"), §§ 13–90.5–101 *et seq.*, C.R.S. (2014), and its Delaware counterpart, Del.Code Ann. Tit. 10, § 4311 (2014).

¶ 9 The State appealed the trial court's dismissal order. The court of appeals reversed and remanded for further proceedings. The court of appeals differentiated between judicial subpoenas, which were at issue in *Solliday,* and the administrative investigatory subpoena at issue in this case. The court ruled that the UCCC grants the Administrator authority to issue investigatory subpoenas, enforceable by a trial court order, against a nonresident entity which the Administrator finds reasonable cause to believe has engaged or is engaging in conduct in Colorado that violates the UCCC. Having reached this determination, the court of appeals found it unnecessary to address whether the CCPA also authorizes the issuance and enforcement of the subpoena in this case. We uphold the judgment of the court of appeals.

## II.

¶ 10 We hold that the trial court has subject matter jurisdiction in this administrative subpoena enforcement action. In enacting the UCCC, the General Assembly conferred administrative subpoena issuance authority upon the UCCC Administrator and authorized the trial court to enforce such a subpoena against a nonresident who is alleged to have violated the Code and has refused to obey a subpoena. In so holding, we distinguish our decisions in *Solliday* and *Colorado Mills.* Each of those cases addressed a limitation under C.R.C.P. 45 restricting service of a subpoena in civil actions to areas located within the State. Neither case involved the special statutory procedure the General Assembly enacted under the UCCC for issuance of administrative investigatory subpoenas and trial court enforcement of them. The UCCC applies equally to resident and nonresident persons who are suspected of conduct violating its provisions.

## A. Standard of Review

¶ 11 A 12(b)(1) motion to dismiss challenges a court's subject matter jurisdiction. When resolution of the jurisdictional issue involves a factual dispute, appellate courts apply a clearly erroneous standard of review. *Walton v. State*, 968 P.2d 636, 643 (Colo. 1998). When there are no disputed facts, as here, the determination of a court's subject matter jurisdiction presents a question of law which is reviewed de novo. *Id.*; *Medina v. State*, 35 P.3d 443, 452–53 (Colo. 2001). Statutory interpretation is likewise a question of law subject to de novo review. *MDC Holdings, Inc. v. Town of Parker*, 223 P.3d 710, 717 (Colo. 2010). Our primary task when interpreting a statute is to determine and give effect to the intent of the legislature. *Id.* When interpreting a statute, we first look to the language employed and, if unambiguous, apply the statute as written unless doing so would lead to an absurd result. *See Marriage of Chalat*, 112 P.3d 47, 54 (Colo. 2005); *People v. Luther*, 58 P.3d 1013, 1015 (Colo. 2002). If possible, we read the statute as a whole, giving consistent, harmonious, and sensible effect to all parts. *In re Crow v. Penrose–St. Francis Healthcare Sys.*, 169 P.3d 158, 165 (Colo. 2007). Under C.R.C.P. 81(a), the Colorado Rules of Civil Procedure do not govern procedure and practice in any special statutory proceeding insofar as they are inconsistent or in conflict with the procedure and practice provided by an applicable statute.

## B. UCCC Administrative Subpoena Issuance Authority

¶ 12 The State contends that (1) the UCCC confers express authority for the Administrator, whom the Attorney General represents, to issue administrative investigatory subpoenas, and (2) Colorado courts have authority under this statute to enforce these subpoenas equally with regard to resident and nonresident persons doing business within the State of Colorado who are suspected of conduct violating this statute. We agree.

¶ 13 Titled "Investigatory powers," section 5–6–106 of the UCCC provides, in part:

(1) *If the administrator has reasonable cause to believe that a person has engaged in an act that is subject to action by the administrator, the administrator may make an investigation to determine if the act has been committed, and, to the extent necessary for this purpose, . . . may subpoena* witnesses, compel their attendance, adduce evidence, *and require the production of any matter that is relevant to the investigation,* including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts, or any other matter reasonably calculated to lead to the discovery of admissible evidence.

(2) *If the person's records are located outside this state, the person at his or her option shall either make them available to the administrator at a convenient location within this state or pay the reasonable and necessary expenses for the administrator or the administrator's representative to examine them at the place where they are maintained.* The administrator may designate representatives, including comparable officials of the state in which the records are located, to inspect them on the administrator's behalf.

(3) *Upon failure without lawful excuse to obey a subpoena or to give testimony, the administrator may apply to the district court for an order compelling compliance.*

§ 5–6–106 (emphasis added).

¶ 14 The General Assembly enacted the UCCC to, inter alia, "protect consumer buyers, lessees, and borrowers against unfair practices by some suppliers of consumer credit." § 5–1–102(2)(d), C.R.S. (2014). It intended a liberal construction of the UCCC promoting the statute's underlying purposes and policies. § 5–1–102(1); *State ex rel. Salazar v. Cash Now Store, Inc.*, 31 P.3d 161, 166 (Colo. 2001).

¶ 15 The plain language of the UCCC makes clear that the Administrator may issue subpoenas against nonresidents conducting business within the State. Section 5–6–106(1) of the UCCC provides that, when the Administrator has "reasonable cause to believe that a person has engaged in an act that

is subject to action by the administrator," the Administrator may investigate and has subpoena authority. In turn, subsection (2) provides that *"[i]f the person's records are located outside this state,"* that person will make the records available to the Administrator in Colorado or will pay the reasonable and necessary expenses for the Administrator to examine them at the place where they are maintained. (Emphasis added).[3] Subsection (3) states that "[u]pon failure ... to obey a subpoena ... the administrator may apply to the district court for an order compelling compliance."

¶ 16 Accordingly, the Administrator may serve upon any person who is suspected of doing business in the State, in violation of the Code, a subpoena for documents located out-of-state, and a trial court may compel compliance with the subpoena. Taken together, these three provisions of the UCCC demonstrate that (1) the General Assembly intended the Administrator to use subpoenas to obtain documents pursuant to an investigation for violations of the Code; (2) the Administrator can subpoena documents that are located within or outside of Colorado;[4] and (3) a trial court has authority to enforce such a subpoena if a person fails to comply with it.

## C. Application to This Case

¶ 17 Tulips argues that a "fundamental principle of federalism and individual state sovereignty deprives a Colorado district court of subject matter jurisdiction to require a nonresident to comply with an out-of-state subpoena;" therefore, the trial court was correct in dismissing the case under C.R.C.P. 12(b)(1) for lack of subject matter jurisdiction. We disagree. In making this argument, Tulips conflates the distinct concepts

of sovereignty, subject matter jurisdiction, personal jurisdiction, and authority for trial courts to act. In addition, Tulips misconstrues our decision in *Solliday*. Affirming the court of appeals' conclusion that the trial court erred in dismissing the State's subpoena compliance enforcement action under C.R.C.P. 12(b)(1) for lack of subject matter jurisdiction, we discuss now each of these contentions.

¶ 18 First, Tulips' argument with respect to sovereignty lacks merit. In asserting that it is a nonresident and therefore is not susceptible to the Administrator's subpoena, Tulips ignores foundational principles of sovereignty that empower the Colorado General Assembly to enact laws regulating an out-of-state entity's conduct of business within the State. Sovereignty involves a state's ability to make and enforce laws. As an independent sovereign, a state may "make and enforce laws for its government, and for the welfare and protection of its citizens and their property." *People v. Dist. Court,* 11 Colo. 147, 152, 17 P. 298, 300 (1888); *see also People v. Tool,* 35 Colo. 225, 234–35, 86 P. 224, 226 (1905) (explaining that sovereignty involves a state's power to execute its laws). The UCCC is such an exercise in sovereignty, requiring residents and nonresidents alike to comply with its terms.[5]

¶ 19 Contrary to Tulips' arguments based upon general principles of sovereignty, it is the province of the responsible state officials and the Colorado courts, not foreign courts, to investigate and enforce the laws of Colorado in the interest of its sovereignty. In fact, thirty-six other states, including Delaware, submitted an amicus brief authored by the State of Wyoming supporting Colorado's position in this case, demonstrating that the vast majority of states do not believe these

---

3. This provision was contained in the UCCC as recodified in 2000. *See* ch. 265, art. 6, § 5–6–106(2), 2000 Colo. Sess. Laws 1247. These provisions were in effect at the time the investigatory subpoena in this case was issued.

4. We decline Tulips' invitation to read this statute to require that the owner of the records must be a Colorado resident. "Where the legislature could have chosen to restrict the application of a statute, but chose not to, we do not read additional restrictions into the statute." *Springer v.*

*City & Cnty. of Denver,* 13 P.3d 794, 804 (Colo. 2000).

5. We reject Tulips' contention that the UCCC is inapplicable to this case because the Attorney General, not the Administrator, issued this subpoena. On its face, the subpoena recites that it is issued by the Administrator under the UCCC and the authority of the Attorney General under the CCPA.

types of investigatory subpoenas encroach upon their sovereignty or violate principles of comity.[6]

¶ 20 Second, Tulips' assertion that "sovereignty deprives a Colorado district court of subject matter jurisdiction" fails to recognize that the subject matter jurisdiction of a state court concerns that court's authority or competence to hear or decide a case and is determined solely by the state constitution and statute. *See* Colo. Const. art. 6, § 9; *see also Currier v. Sutherland*, 218 P.3d 709, 712 (Colo. 2009). Absent explicit legislative limitation, Colorado courts have unrestricted and sweeping jurisdiction. *In re A.W.*, 637 P.2d 366, 373–74 (Colo. 1981).

¶ 21 Tulips has not pointed to any language in the UCCC that divests the trial court of subject matter jurisdiction to enforce the administrative subpoena in this case. To the contrary, the UCCC contemplates the issuance of extraterritorial administrative subpoenas and explicitly grants trial courts authority to enforce such subpoenas. *See* § 5–6–106.

¶ 22 Third, personal jurisdiction involves the court's ability to subject a particular defendant to the authority of the court. Due process prohibits the exercise of personal jurisdiction over a nonresident unless the person has certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Nickerson v. Network Solutions, LLC*, 2014 CO 79, ¶ 11, 339 P.3d 526 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Tulips appeared in response to the court's contempt citation, contesting the trial court's subject matter jurisdiction through a C.R.C.P. 12(b)(1) motion, but it did not raise lack of personal jurisdiction, thus waiving such a defense. *See* C.R.C.P. 12(h)(1). Therefore, the issue of personal jurisdiction is not properly before us.

¶ 23 Fourth, Tulips' assertion that the trial court lacks authority to require it to comply with the Administrator's investigatory subpoena is incorrect. A court's authority to act derives from rule, statute, case law, or the inherent authority of courts. *See, e.g.*, *People v. Dist. Court*, 195 Colo. 14, 16, 575 P.2d 7, 8 (1978) (concluding there was no statute or case that gave the court authority to remove a juvenile defendant from the State for an evaluation); *Buder v. Sartore*, 774 P.2d 1383, 1389–90 (Colo. 1989) (concluding the trial court had authority to assess damages for losses of custodial property derived from statute); *Feigin v. Colo. Nat'l Bank, N.A.*, 897 P.2d 814, 820 (Colo. 1995) (determining "in the exercise of their equitable authority district courts may quash an administrative subpoena found to be unreasonable or oppressive"); *People v. Aleem*, 149 P.3d 765, 774 (Colo. 2007) (discussing a court's inherent authority to use all powers reasonably required to protect the integrity of the court and judicial process). For the reasons set forth in this opinion, we conclude the UCCC confers authority for the Administrator's issuance of the subpoena and the trial court's enforcement of it.

¶ 24 Fifth, Tulips misconstrues our decisions in *Solliday* and *Colorado Mills* in arguing that the State can never subject an out-of-state resident to a subpoena for the production of documents that are located outside the State. That the case now before us involves the trial court's authority to act and does not implicate the principles of sovereignty, subject matter jurisdiction, or personal jurisdiction follows from a careful examination of *Solliday* and its progeny. Tulips ignores our focus in *Solliday* upon our rules of civil procedure applicable to discovery by parties in civil actions. *See Solliday*, 135 Colo. at 495–96, 313 P.2d at 1003 ("The Colorado Rules of Civil Procedure, with which we are concerned, appear as Rules 26, 28, and 45.").

¶ 25 As we pointed out in *Solliday*, the trial court there had required an individual to

6. The states that signed onto Wyoming's amicus brief are Alaska, Arizona, Arkansas, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Mexico, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Utah, Vermont, Washington, and West Virginia.

produce his income tax returns in Colorado, despite the fact that he was an Oklahoma resident, had not appeared within the borders of Colorado, was not a party to the Colorado civil action involving companies doing business in Colorado, and was never served in Colorado with a subpoena. *Id.* at 491–92, 313 P.2d at 1001. Under the facts of that case, we held that the trial court did not have authority to enforce the judicial subpoena against Solliday who was a nonresident nonparty to the civil action at hand. *Id.* at 500, 313 P.2d at 1005. C.R.C.P. 45(e)(1), in effect at that time, required subpoenas to be served within the State of Colorado, just as C.R.C.P. 45(b)(2) now authorizes service of a subpoena only within the State. *See* C.R.C.P. 45(b)(2) ("Service may be made within the state of Colorado."). We concluded in *Solliday* that the Colorado litigants must seek their discovery and deposition of the Oklahoma resident through applicable Oklahoma legal authorities. 135 Colo. at 499, 313 P.2d at 1005. The court had no authority to enforce the subpoena in that case because the subpoena was not served upon Solliday within Colorado in accordance with C.R.C.P. 45.

¶ 26 That our *Solliday* decision is ultimately grounded upon a trial court's lack of authority to act in a particular circumstance, and not upon lack of subject matter jurisdiction, is apparent from our persistent use of the term "authority," not "jurisdiction," in our more recent *Colorado Mills* decision. Notably, our *Colorado Mills* discussion and holding does not once employ the term "subject matter jurisdiction." Instead, we use the term "authority" throughout the opinion in making our rule absolute prohibiting judicial enforcement of an arbitrator's subpoena against a nonresident nonparty. There, we addressed whether a trial court could enforce a subpoena issued by an arbitrator against a nonresident who was not a party to the Colorado arbitration and was not served in Colorado. *Colo. Mills,* ¶¶ 1–6. We determined that Colorado's version of the Revised Uniform Arbitration Act expressly incorporated

the limitations found in C.R.C.P. 45. *Id.* at ¶ 12. Importantly, we noted that the out-of-state nonparties were served with the subpoenas at their places of business in California and North Dakota in violation of the requirements of C.R.C.P. 45(b)(2). *See id.* at ¶ 6. Citing *Solliday,* we ruled the trial court had "no authority to enforce civil subpoenas against out-of-state nonparties." *Id.* at ¶ 9. As in *Solliday,* we pointed out the possibility of an alternative means for discovery of a nonparty's documents in the state of that person's residency. *Id.* at ¶¶ 18–19 (discussing the principles of the UIDDA).

¶ 27 In determining that the requirements of C.R.C.P. 45 applied, we noted the Revised Uniform Arbitration Act states that subpoenas must not only "be served in the manner for service of subpoenas in a civil action," but also "enforced in the manner for enforcement of subpoenas in a civil action." *Id.* at ¶ 12; § 13–22–217(1), C.R.S. (2014). This language regarding manner of enforcement formed the basis of our conclusion in *Colorado Mills.* 2012 CO 4, ¶ 12, 269 P.3d 731 ("The language of section 13–22–217(1) thus confines the district court's enforcement authority in the arbitration context to that degree of authority it would possess 'in a civil action.' "). In other words, the phrase "enforced in the manner for *enforcement of subpoenas in a civil action*" explicitly incorporates the procedures regarding service of subpoenas contained in C.R.C.P. 45 into the uniform arbitration statute. (Emphasis added).

¶ 28 In sum, *Solliday* and *Colorado Mills* centered on the service of subpoenas in civil actions against nonresident nonparties under C.R.C.P. 45.[7] Neither *Solliday* nor *Colorado Mills* involved judicial enforcement of an administrative investigatory subpoena against out-of-state persons doing business in Colorado or the General Assembly's authorization for Colorado courts to enforce such an administrative subpoena. The requirements of C.R.C.P. 45 do not necessarily apply to the issuance and enforcement of administrative

---

**7.** Similarly, in *In re People v. Arellano–Avila,* where we analyzed whether the Colorado Rules of Criminal Procedure allowed the defendant to depose a Mexican citizen residing in Mexico, we reasoned that "[i]t logically follows that the court may not order a deposition of any person who may not be legally served a subpoena." 20 P.3d 1191, 1193 (Colo. 2001).

subpoenas. In *People ex rel. Orcutt v. District Court*, for example, we upheld the trial court's authority to enforce an administrative subpoena issued by the Commissioner of Agriculture pursuant to section 7–3–19(3), C.R.S. (1963). 164 Colo. 385, 392–93, 435 P.2d 374, 377 (1967). In doing so, we stated that

> [i]f the legislature intended that such proceeding was to be handled as just another civil proceeding, it could have said so. But it did not, and from the language of the statute itself, it is apparent to us that the legislature intended to provide a simplified procedure for the judicial enforcement of administrative subpoenas.

*Id.* at 392, 435 P.2d at 377. Likewise, in *Feigin*, we held that C.R.C.P. 45(b) is not directly applicable to the enforcement of administrative subpoenas issued pursuant to the Colorado Securities Act, §§ 11–51–101 et seq., C.R.S. (1994 Supp.). 897 P.2d at 817. Citing *Orcutt* and characterizing the Securities Act subpoena issuance and enforcement provisions as a special statutory proceeding, we stated that "[t]he enforcement proceeding in this case is similarly ancillary to the provisions of the Act granting authority to the commissioner to issue administrative subpoenas. Therefore, the proceeding is not governed in general by the rules of civil procedure." *Id.* at 819.

¶ 29 In order to determine whether the trial court has authority to enforce the subpoena, we look to the plain language of the UCCC. We conclude that, the trial court has authority to enforce the administrative subpoena. The UCCC contemplates the issuance of extraterritorial administrative subpoenas and explicitly grants trial courts authority to enforce such subpoenas. Tulips is suspected of doing business in Colorado in violation of statutory requirements that are applicable to all persons, whether residents or nonresidents. The special investigatory statutory procedures of the UCCC, in particular UCCC section 5–6–106(1)–(3), provides authority to issue UCCC investigatory subpoenas and give trial courts authority to enforce them. UCCC investigatory subpoenas are not dependent upon the exercise of C.R.C.P. 45, which we adopted in

our rulemaking capacity to authorize subpoenas in civil actions filed in the courts. In contrast, the General Assembly has not restricted the service of an investigatory subpoena to locations only within Colorado. The Administrator's investigatory authority extends to persons the Administrator has reasonable cause to believe have engaged in conduct violating the UCCC. § 5–6–106(1). UCCC section 5–6–106(2) contains a specific procedure for subpoenaing such a person's "records [that] are located outside this state" and provides for alternative locations of production, either "at a convenient location within this state" or "at the place where they are maintained." Section 5–6–106(3) states that "[u]pon failure ... to obey a subpoena" the Administrator may apply to the trial court for a compliance order. These provisions manifest legislative intent for extraterritorial service of subpoenas and their enforcement by a court in an instance of noncompliance by a resident or nonresident.

¶ 30 In this case, the State served the investigatory subpoena, the trial court order enforcing the investigatory subpoena, and the contempt citation for failure to comply with the court's order upon Tulips' registered agent in Delaware through a Delaware deputy sheriff. While the UCCC contains no reference to, or restriction upon, the manner of service of an investigatory subpoena on a nonresident person suspected of violating the Code or a court order requiring compliance, we conclude that the General Assembly's silence about the manner of service of a UCCC administrative subpoena does not require a default to the provisions of C.R.C.P. 45(b)(2), which limit service to locations within Colorado. Rather, we determine that the General Assembly intended that the State may effectuate service utilizing any authorized manner of service provided by law that complies with principles of due process. Where a statute is silent on a certain matter and that silence prevents a reasonable application of the statute, we must endeavor to interpret and apply the statute despite that silence, all the while striving to effectuate the General Assembly's intent and the beneficial purpose of the legislative measure. *In re*

*2000–2001 Dist. Grand Jury,* 97 P.3d 921, 924 (Colo. 2004).[8]

¶ 31 In similar circumstances involving an administrative agency's investigatory subpoena power, the New Jersey Supreme Court analyzed the issue as presenting whether a state "may require the attendance of one who has purposely availed himself," in that case, "of the privilege of entering regulated securities markets in the forum state." *See Silverman v. Berkson,* 141 N.J. 412, 661 A.2d 1266, 1273 (1995). The court concluded that "personal service of the subpoena within the territorial boundaries of the issuing state is not a prerequisite to a valid administrative order to appear." *Id.* The court nevertheless agreed that, absent "purposeful availment," the authority to proscribe conduct in another forum would not suffice to confer jurisdiction to enforce a civil investigative demand in the territory of another state. *Id.* In order to "minimize the degree of intrusion on the sovereignty of the other state, we insist that ... the process be served only by those authorized to do so under the laws of the state." *Id.* at 1275. Indeed, in the case before us, a deputy sheriff of Delaware served Colorado's investigatory subpoena, the Colorado court's order enforcing the subpoena, and the Colorado court's contempt citation upon Tulips' registered agent in Delaware.

¶ 32 In sum, the special statutory provisions of the UCCC intend and authorize extraterritorial service of administrative subpoenas enforceable by Colorado courts. While subpoenas issued under the authority of C.R.C.P. 45 are restricted to service within Colorado, *see* C.R.C.P. 45(b)(2), it does not follow that all subpoenas issued pursuant to Colorado statutory authority are subject to the restrictions of this rule. Instead, we must look to the statutory intent and substance of the particular statute that authorizes or restricts the subpoena authority.

¶ 33 The authority in this case to issue the investigatory subpoena and obtain court-ordered compliance derives from the special statutory procedures the General Assembly provided in the UCCC. Adopting Tulips' position that an investigatory subpoena can never be enforced against a nonresident would severely limit the Administrator's ability to effectuate the purpose of the UCCC: to protect Colorado consumers. With the growth of interstate business activity and the advent of the Internet, out-of-state persons increasingly can conduct business with Colorado consumers without ever physically entering the State. In order to protect Colorado consumers from unfair business practices, the General Assembly authorized judicial enforcement of the administrative investigatory subpoenas against out-of-state persons suspected of doing business in Colorado in violation of the statute.

¶ 34 Certainly, an out-of-state person may invoke lack of personal jurisdiction in a trial court subpoena enforcement proceeding. The principles of *International Shoe* and Colorado's long-arm statute, section 13–1–124, C.R.S. (2014), apply.[9] Due process requires "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154. We agree with the New Jersey Supreme Court that issuing and enforcing administrative subpoenas against nonresidents is a due process concern and is limited to requiring the attendance of those who have purposefully availed themselves of entering the State's commercial market. *See Silverman,* 661 A.2d at 1276. As discussed above, Tulips

---

8. We reject Tulips' argument that Administrative Procedure Act ("APA") section 24–4–105(5), C.R.S. (2014), relating to issuance of subpoenas in quasi-judicial administrative proceedings applies to this case by reason of the reference in UCCC section 5–6–107, C.R.S. (2014), to APA procedures. The issuance of an administrative investigatory subpoena and judicial enforcement of the subpoena under section 5–6–106 is not a quasi-adjudicatory action under section 24–4–105(2)(a) where "an opportunity for agency adjudicatory hearing is required under the state constitution or by this or any other statute."

9. Colorado's long-arm statute did not apply in *Colorado Mills* because "SunOpta's subpoenas d[id] not 'concern ... any cause of action arising from' an act committed by SK Food or Adams." 2012 CO 4, ¶ 16, 269 P.3d 731. In contrast, here, the State's subpoena concerns a possible cause of action arising from acts committed by Tulips.

contested the trial court's subject matter jurisdiction through a C.R.C.P. 12(b)(1) motion, but it did not contest personal jurisdiction—thus waiving such a defense. *See* C.R.C.P. 12(h)(1).

¶ 35 Because we determine that the trial court has subject matter jurisdiction and authority under the UCCC to enforce the administrative subpoena in this case, we need not address the parties' arguments regarding the CCPA.[10]

## III.

¶ 36 Accordingly, we affirm the court of appeals' judgment setting aside the trial court's C.R.C.P. 12(b)(1) order of dismissal, and we return this case to the trial court for further proceedings consistent with this opinion.

---

10.  Whether the Administrator or Attorney General could instead have enforced the subpoena using the UIDDA is irrelevant. The language and legislative intent of the UCCC evinces a simplified procedure for the judicial enforcement of administrative subpoenas. It is entirely acceptable for the Administrator, represented by the Attorney General, to choose one method to enforce a subpoena to the exclusion of another. Therefore, we do not need to address whether the State could also use the UIDDA to enforce pre-litigation administrative subpoenas.