OPINION OF THE COURT
Vincent E. Doyle, J.
Motion by Occidental Chemical Corporation (Occidental defendant), Board of Education of the City School District of the City of Niagara Falls, New York, the City of Niagara Falls, New York, and the County of Niagara, New York, for an order amending the four coordinated discovery orders previously granted in these Love Canal actions (entered Aug. 7, 1981, Feb. 4, 1983, Sept. 25, 1984 and Sept. 25, 1984) by granting a superseding coordinate discovery order:
1) so that, prior to allowing a plaintiff to further prosecute a personal injury claim after service of a summons and complaint in these Love Canal actions, each plaintiff shall provide:
(a) Exposure. Evidentiary documentation, showing the factual basis, including street addresses for each plaintiff’s exposure to a chemical at or from the old Love Canal landfill.
(b) Injury. Reports of physicians and other medical experts documenting the existence of each injury claimed to have been caused by exposure to chemicals from the old Love Canal landfill.
(c) Causal Relationship. Reports or affidavits of a physician or other qualified expert demonstrating that each injury of a plaintiff was, in fact, caused by the plaintiff’s exposure to chemicals at or from the old Love Canal landfill.
(d) And dismissing so much of plaintiffs’ claims for alleged personal injury as fail to substantiate, within the time established by this court’s order, a prima facie showing pursuant to (a), (b) and (c) above. This motion is opposed by all plaintiffs.
Hooker Electrochemical Company, later known as Hooker Chemicals and Plastics Corporation and now known as Occidental Chemical Corporation, used a partially excavated canal for disposal of industrial waste from 1942 to 1953. The old canal property was transferred on April 28, 1953 to the Board of Education of the City of Niagara Falls (School Board) by deed indicating that chemical wastes had been buried on the *1078 property and required that each subsequent deed contain an identical warning. The School Board erected the 99th Street School adjacent to, but not on, the canal property. The northerly portion of the canal property was transferred in about 1960 by the School Board to the City of Niagara Falls (the City). Homes were subsequently built over the succeeding years adjacent to, but not on the old landfill.
The southerly portion of this property was acquired through condemnation by the State of New York in approximately 1968 in connection with the construction of the LaSalle Expressway. In 1977, area residents started to complain that chemicals were migrating from the old landfill site. On August 22, 1978, after a surge of publicity regarding Love Canal, the State of New York began installation of an eight-foot-high chain link fence enclosing the old landfill, which subsequently was extended to include the first and second rings of homes, all of which were demolished except for two in the second ring. The old landfill was sealed during 1978 and 1979 with a three-foot-thick clay cap, eliminating even the possibility of the risk of any chemical exposure to persons after late 1979.
Actions were commenced in 1979 and 1980, venued in Niagara County, which were ultimately settled. To coordinate discovery in all Love Canal actions, four orders were granted on August 7, 1981, February 4, 1983 and September 25, 1984 (two orders) referred to as coordinating discovery orders (CDOs) by the late Honorable Joseph P. Kuszynski, designated to preside over all Love Canal actions. CDO-1 granted on August 7, 1981 appointed Phillips, Lytle, Hitchcock, Blaine & Huber coordinating counsel for defendants and Stanley Gross-man for plaintiffs and also controlled discovery "in all Love Canal actions subsequently commenced, unless ordered otherwise by this court.” The second CDO granted on February 3, 1983, while it addressed the form and manner in which defendants could collect medical records from treating physicians, it permitted the medical provider to release only records related to specific medical complaints and no others in actions specifically identified on a list annexed to CDO-2 as attachment A; all of which actions, except three, have now been resolved. On the complaints of both the medical providers and the Niagara County Medical Society, that the medical providers had to spend considerable time separating records regarding specific claimed medical complaints from unclaimed medical problems, the court granted CDO-3 on September 24, 1984 as well as CDO-4.
*1079 CDO-3 controls discovery in all actions on "Attachment” annexed thereto and in all Love Canal actions subsequently commenced, apparently superseding CDO-1. It specifically addresses settlement of orders, bills of particulars, interrogatories, document production and depositions.
CDO-4 entered by stipulation on September 25, 1984 specifically concerns the procedures for discovery by defendants of plaintiffs’ medical records of those plaintiffs represented by the Julien, Feldman and Morrison firms, all of which claims have now been resolved.
A second wave of actions was commenced in 1985 on behalf of 216 plaintiffs, a list of which is contained in defendants’ exhibit E and in which the vast majority of plaintiffs are represented by the Grossman and Lippes firms.
After the passage of CPLR 214-c and the so-called "Revival Statute” (L 1986, ch 682, § 4 [both eff July 30, 1986]), nearly 689 named plaintiffs have commenced 432 separate actions in 1986 and 1987. Those actions commenced after July 30, 1986 are referred to as the Third Wave Love Canal actions and in which the vast majority of plaintiffs are represented once again by the Grossman and Lippes firms.
While defendants have not moved for summary judgment under CPLR 3212 and have explicitly advised this court that such is not the basis for the present motion, they have nonetheless presented numerous affidavits, studies, opinions, citations of cases, and arguments to persuade this court that in view of what they describe as newly developed information, plaintiffs will be unable to prove the necessary causation between plaintiffs’ alleged exposure to chemicals and the injuries claimed. Likewise, plaintiffs, while acknowledging that the present motion is not for summary judgment, nonetheless provide this court with a number of studies which causally relate health injuries sustained by these plaintiffs as a result of exposure to Love Canal chemicals; concluding, that in any event, questions of fact have been raised as to the issue of causation. Clearly, this evidence is not addressed to the specific issues raised on the instant motion, namely: (1) Does this court have authority to alter the coordinated discovery orders previously issued by Justice Kuszynski in related actions, (2) should this court exercise such authority under the circumstances now presented.
Plaintiffs contend in opposition: (1) this court has no power to compel disclosures absent formal motions for summary *1080 judgment, (2) New York law does not authorize this court to grant the relief requested, (3) that this court is without explicit authority to order disclosure of discovery within a reasonable time after commencement of these actions. However, plaintiffs do agree that evidence as to exposure and injury is subject to pretrial discovery. Also, plaintiffs agree that evidence of causation is a most relevant issue which will be presented at the time of trial. Nor do plaintiffs dispute that without such evidence, they cannot recover under any theory of law. Thus, evidence of exposure, injury and causation is "material and necessary” in these actions, and any facts relating to these issues are discoverable (CPLR 3101 [a]; Allen v Crowell-Collier Publ. Co., 21 NY2d 403). Moreover, the recently enacted provisions of CPLR 3101 (d) are applicable in all actions commenced on or after July 1, 1985. Of the 541 pending actions, 519 (about 96%) were commenced after July 1, 1985.
The provisions of CPLR 3101 (d) (1) provide in pertinent part: "(i) Upon request, each party shall identify each person whom the party expects to call as an expert witness at trial and shall disclose in reasonable detail the subject matter on which each expert is expected to testify, the substance of the facts and opinions on which each expert is expected to testify, the qualifications of each expert witness and a summary of the grounds for each expert’s opinion.”
Clearly, plaintiffs will have to reveal during discovery stages evidence upon which their causation expert will base his or her opinion. Additionally, plaintiffs are obligated to provide medical reports from attending and treating physicians with respect to the injuries alleged in plaintiffs’ lawsuits before trial. Failure to do so could result in a preclusion of plaintiffs from presenting evidence (see, Uniform Rules for Trial Cts, 22 NYCRR 202.17 [h]; In re Urea-Formaldehyde Foam Insulation Litig. [Boneberg v Bergen Insulation Co.] [Moule, J.H.O.]). Thus, in this recent decision of Justice Moule, affirmed by the Appellate Division (140 AD2d 1013), plaintiffs must provide information in advance of trial.
As to the issue of this court’s authority, the provisions of CPLR 602 (a) provide in pertinent part as to actions before it, "the court * * * may make such other orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.” Plaintiffs acknowledge that the large number of cases required "special procedures” by the court to manage these actions. Also, plaintiffs recognized the court’s inherent powers *1081 pursuant to CPLR 602 (a) to "consolidate and coordinate all pretrial proceedings”. Thus, the parties agree the court has broad inherent powers. In this regard, CPLR 3103 (a) provides in pertinent part: "The court may at any time on its own initiative, or on motion of any party or witness, make a protective order denying, limiting, conditioning or regulating the use of any disclosure device. Such order shall be designed to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts.” (Emphasis added.)
Defendants, here, propose an amendment to the CDOs, "regulating” the discovery process to require disclosures of exposure, injury and causation before trial so as to avoid the expenses and delay of discovery and the expenditure of the court’s time in those cases where plaintiffs are unable to present sufficient evidence of causation. Obviously, where evidence of exposure, injury and causation are sufficiently demonstrated, further disclosure proceedings will be ordered and conducted. Since disclosure must be made before trial, plaintiffs will have to retain experts in any event. Moreover, New York requires attorneys in all actions to investigate the legal and factual basis for an action before commencing litigation (see, 22 NYCRR part 130-1).
Plaintiffs’ counsel, here, having been involved in these Love Canal cases for nearly 10 years, with the knowledge that expert opinion is a necessary concomitant to proof of causation cannot now claim prejudice or hardship if such evidence of causation must be produced prior to the time of trial. Further, "a court * * * may * * * invoke its inherent authority to deal with cases before it [as here] in any appropriate manner, even in the absence of any direct grant of legislative or administrative power” (see, Bankers Trust Co. v Braten, 101 Misc 2d 227, 235, and cases cited therein). Inherent powers consist of all powers reasonably required to enable a court to perform efficiently its judicial functions and to make its lawful actions effective (see, Bankers Trust Co. v Braten, supra; Matter of Association of Bar, 222 App Div 580). Every court has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction (14 Am Jur, Courts, § 171; 21 CJS, Courts, § 14). Moreover, the Judiciary Law encourages judicial resourcefulness in crafting appropriate remedies in the absence of express authority. Subdivision (3) of section 2-b of the Judiciary Law provides that a court of record has power "(3) to devise *1082 and make new process and forms of proceedings, necessary to carry into effect the powers and jurisdiction possessed by it.”
The court in Lore v Lone Pine Corp. (1 Tox L Rep [BNA] 726 [NJ Super Ct, Monmouth County, Nov. 18, 1986, docket No. L3306-85]), granted the exact relief sought here. The court in Lone Pine issued a case management order requiring plaintiffs’ counsel to produce evidentiary documentation on behalf of each plaintiff in that case who claimed personal injury arising from the Lone Pine landfill. After submission of information by plaintiffs, the court rejected it as inadequate. On motion, the court dismissed all claims with prejudice stating in pertinent part:
"In this court’s opinion, it is time that prior to the institution of such a cause of action, attorneys for plaintiffs must be prepared to substantiate, to a reasonable degree, the allegations of personal injury, property damages, and proximate cause.
"With the hundreds of thousands of dollars expended to date in this case it appears that plaintiffs’ counsel is moving things along without complying with discovery orders, hoping that some of the defendants, to avoid further delay and expense, would recommend a settlement of the case. However, there is nothing to settle because there is total and complete lack of information as to causal relationship and damages.
"This Court is not willing to continue the instant action with the hope that the defendants eventually will capitulate and give a sum of money to satisfy plaintiffs and their attorney without having been put to the test of proving their cause of action.” (Supra.)
In Adinolfe v PJP Landfill (2 Tox L Rep [BNA] 506 [NJ Super Ct, Hudson City, Aug. 21, 1987, docket No. L-066549-86]), the suit involved 80 plaintiffs who alleged they were injured by exposure to chemicals from a waste landfill. The court’s case management orders had required plaintiffs to submit factual proof of exposure to specific chemicals, the dates of exposure, the medical conditions of each plaintiff and causation. The court in finding plaintiffs’ submission "glaringly meager, inadequate and incomplete” stated: "As far as this court can see, plaintiff at this point may have no experts to testify in this case or no experts who could withstand cross-examination, or no experts who, in fact, would even be able to supply admissible opinions under our case law. The clearly inadequate nature of these medical reports is apparent. * * * *1083 The foregoing is not a provable case, and Ayers [v Jackson Township], 106 NJ 557 (1987) does not so state, especially when one considers that 14 months after law suits [began], proof of a causal connection between the fumes and the injuries is non-existent, proof of causal connection between specific activities by specific defendants and the plaintiffs’ alleged injuries appears to be non-existent, and proof that toxic chemicals produced toxic fumes and the effect thereof on the plaintiffs is non-existent.” (Supra.)
The New Jersey Superior Court affirmed, without opinion, the lower court’s dismissal of plaintiff’s claims in Adinolfe v PJP Landfill (111 NJ 573, 546 A2d 501 [May 12, 1988]). See also In re Urea-Formaldehyde Foam Litig. (Boneherg v Bergen Insulation Co.) (Sup Ct, Erie County, Oct. 2, 1987, index No. H69181), now pending in the Eighth Judicial District, involving over 300 actions on behalf of more than 1,200 plaintiffs, which have been placed under a coordinated discovery plan; and in which former Justice Reid S. Moule as Judicial Hearing Officer, directed plaintiffs to „ produce medical reports pursuant to section 202.17 of the Uniform Rules for Trial Courts (22 NYCRR). Section 202.17 provides: "these reports shall include a detailed recital of the injuries and conditions as to which testimony will be offered at trial”. The Appellate Division by its order of May 27, 1988 affirmed the order, without opinion (140 AD2d 1013, supra).
Based upon the court’s inherent power of management as well as the authorities cited above, it is clear that this court has authority to amend or alter previous CDOs issued by Justice Kuszynski.
With respect to the need for a new approach to the handling of these Love Canal actions, the uncontradicted facts stated by defendants’ counsel are (1) that the complaints used by the Grossman and Lippes firms in all waves of these Love Canal actions are "form” complaints containing 13 alleged causes of action. The only meaningful variance in such complaints is the names and addresses of the various plaintiffs, (2) and the bills of particulars served by plaintiffs are ambiguous and misleading in that the form response made by each plaintiff to defendants’ inquiry as to specific addresses and dates of visits by plaintiffs to areas where chemicals and waste products were allegedly deposited, is not only unresponsive but inaccurate where concededly, access to most of the region between 97th and 99th Streets (rings 1 and 11) was prohibited by the erection of an eight-foot fence in 1978. Yet plaintiffs *1084 state that some plaintiffs not even born until 1980 frequented the above-indicated area from October 1980 through November 1980. Responses equally inconceivable to other requests from defendants can be found in defendants’ exhibit S.
Further, it is noted that 75 responses to demand for bills of particulars in the 106 second wave actions still remain unresolved, (3) likewise, CDO-4 on a stipulated experimental basis has created an elaborate and burdensome procedure to obtain medical records which will require the involvement of this court to resolve disputes that have arisen. (4) During the depositions of two plaintiffs, they were directed by their counsel not to answer questions posed by defense counsel. The Grossman office has refused to schedule the continuation of the depositions of these two plaintiffs or any other depositions by refusing to produce any plaintiff for questioning unless the deposition is supervised.
The history of discovery in these Love Canal actions demonstrates that alterations to the CDOs are required.
Accordingly, prior to any further prosecution of a personal injury claim in these Love Canal actions, within six months from the service of an order herein, each plaintiff shall provide the following documentation to defendants: (a) Facts, including street addresses for each plaintiff’s exposure to a chemical at or from the old Love Canal landfill, (b) reports of treating physicians and medical or other experts, supporting each individual plaintiff’s claim of injury and causation thereof by exposure to chemicals from the old Love Canal landfill.
Plaintiffs’ actions shall not be dismissed absent prior application to this court.
If so desired, a case management conference as to implementation of this order may be scheduled on some mutually convenient date.