2015 CO 26

**ANTERO RESOURCES CORPORATION,** Antero Resources Piceance Corporation, Calfrac Well Services Corporation, and Frontier Drilling LLC, Petitioners

v.

William G. STRUDLEY and Beth E. Strudley, individually, and as the parents and natural guardians of William Strudley, a minor, and Charles Strudley, a minor, Respondents

Supreme Court Case No. 13SC576

Supreme Court of Colorado.

April 20, 2015

Certiorari to the Colorado Court of Appeals, Court of Appeals Case No. 12CA1251

Hogan Lovells US LLP, Daniel J. Dunn, Andrew C. Lillie, David A. DeMarco, Denver, Colorado, Hogan Lovells US LLP, Catherine E. Stetson, Washington, DC, Vinson & Elkins LLP, James D. Thompson III, Marie R. Yeates, Sandra G. Rodriguez, Houston, Texas, Attorneys for Petitioners Antero Resources Corporation and Antero Resources Piceance Corporation.

Burns Figa & Will, P.C., Matthew B. Dillman, Sarah M. Shechter, Greenwood Village, Colorado, Attorneys for Petitioner Frontier Drilling LLC.

Davis Graham & Stubbs, LLP, Gail L. Wurtzler, Shannon Wells Stevenson, Denver, Colorado, Attorneys for Petitioner Calfrac Well Services Corp.

Thomas Genshaft LLP, Peter W. Thomas, Aspen, Colorado, Frascona, Joiner, Goodman and Greenstein P.C., Corey T. Zurbuch, Boulder, Colorado, Napoli Bern Ripka Shkolnik & Assoc. LLP, Marc Jay Bern, New York, New York, Attorneys for Respondents.

Fennemore Craig, P.C., Terry Cipoletti, Denver, Colorado, Hollingsworth LLP, Richard O. Faulk, Washington, D.C., Attorneys for Amici Curiae National Association of Manufacturers, American Fuel and Petrochemical Manufacturers, American Chemistry Council, American Coatings Association, Independent Petroleum Association of America, and Metals Service Center Institute.

Snell & Wilmer L.L.P., Lee Mickus, Jessica E. Yates, Denver, Colorado, Attorneys for Amici Curiae Colorado Civil Justice League, Denver Metro Chamber of Commerce, Chamber of Commerce of the United States of America, Coalition for Litigation Justice, Inc., and American Tort Reform Association.

Steptoe & Johnson LLP, Mark P. Fitzsimmons, Jared R. Butcher, Washington, D.C., Steptoe & Johnson LLP, Bennett Evan Cooper, Phoenix, Arizona, Attorneys for Amicus Curiae American Petroleum Institute.

Greenberg Traurig, LLP, Christopher J. Neumann, Gregory R. Tan, Harriet A. McConnell, Denver, Colorado, Attorneys for Amicus Curiae Colorado Petroleum Association.

Ruebel & Quillen, LLC, Casey A. Quillen, Jeffrey C. Ruebel, Westminster, Colorado, Attorneys for Amicus Curiae Colorado Trial Lawyers Association.

Klibaner Law Firm P.C., David A. Klibaner, Denver, Colorado, Attorneys for Amicus Curiae Colorado Defense Lawyers Association.

JUSTICE HOBBS delivered the Opinion of the Court.

¶ 1 We granted certiorari to consider whether a specialized type of modified case management order known as a *"Lone Pine* order" is authorized under the Colorado Rules of Civil Procedure and, if so, to assess whether the trial court abused its discretion by entering such an order in this case.[1] *Lone Pine* orders developed from an unpublished opinion of the Superior Court of New Jersey, *Lore v. Lone Pine Corp.,* No. L–33606–85, 1986 WL 637507 (N.J.Super. Ct. Law Div. Nov. 18, 1986). Entered after initial disclosures but before discovery, *Lone Pine* orders require plaintiffs in toxic tort cases to provide evidence sufficient to establish a prima facie case of injury, exposure, and causation, or else face dismissal of their claims. Federal Rule of Civil Procedure 16(c) authorizes their use in complex federal cases to reduce potential burdens on defendants, particularly in mass tort litigation. *See, e.g., Acuna v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir.2000).

¶ 2 After the initial exchange of Rule 26 disclosures, Antero Resources Corporation, Antero Resources Piceance Corporation, Calfrac Well Services Corporation, and Frontier Drilling LLC (collectively "Antero Resources") asked the trial court to enter a modified case management order requiring the plaintiffs ("the Strudleys") to present prima facie evidence that they suffered injuries attributable to the natural gas drilling operations of Antero Resources. The trial court granted the motion and issued a *Lone Pine* order that directed the Strudleys to provide prima facie evidence to support their allegations of exposure, injury, and causation before the court would allow full discovery. The trial court determined that the Strudleys failed to present sufficient evidence and dismissed their case with prejudice. The court of appeals reversed, concluding that, as a

matter of first impression, *Lone Pine* orders "are not permitted as a matter of Colorado law." We agree with the court of appeals.

■ ¶ 3 We hold that Colorado's Rules of Civil Procedure do not allow a trial court to issue a modified case management order, such as a *Lone Pine* order, that requires a plaintiff to present prima facie evidence in support of a claim before a plaintiff can exercise its full rights of discovery under the Colorado Rules. Although the comments to C.R.C.P. 16 promote active judicial case management, the rule does not provide a trial court with authority to fashion its own summary judgment-like filter and dismiss claims during the early stages of litigation.

## I.

¶ 4 William G. Strudley and Beth E. Strudley, individually, and as the parents of two minor children, sued Antero Resources, claiming they suffered physical injuries and property damage due to Antero Resources' natural gas drilling operations near their home. Specifically, the Strudleys allege that pollutants from the drilling site contaminated the air, water, and ground near their home, causing them to suffer burning eyes and throats, rashes, headaches, nausea, coughing, and bloody noses. Initial construction of the drilling operations began in August 2010, and the Strudleys assert that the pollution forced the family to move shortly thereafter, in January 2011. While the complaint identified several chemicals that allegedly polluted the property, it did not causally connect specific chemicals to actual injuries.

¶ 5 Both parties exchanged initial disclosures as required by the presumptive case management order in place under C.R.C.P. 16(b) and C.R.C.P. 26. Antero Resources then moved for a modified case management order under C.R.C.P. 16(c), requesting that the trial court issue a *Lone Pine* order re-

---

1. We granted certiorari on the following issues in this case:

   1. Whether a district court is barred as a matter of law from entering a modified case management order requiring plaintiffs to produce evidence essential to their claims after initial disclosures but before further discovery.

2. Whether, if such modified case management orders are not prohibited as a matter of law, the district court in this case acted within its discretion in entering and enforcing such an order.

quiring the Strudleys to present prima facie evidence to support their claims before discovery could continue. In support of its argument that there was substantial doubt as to whether the Strudleys could make a prima facie showing of exposure, injury, and causation, Antero Resources submitted a Colorado Oil and Gas Conservation Commission report finding no "oil & gas related impacts to [the Strudleys'] well." Additionally, Antero Resources submitted sworn testimony that it operated the wells in compliance with all applicable laws. Antero Resources expressed concern that discovery would be costly and burdensome for the defendant companies. The Strudleys objected contesting that under Colorado law and existing statutory procedures they had a right to engage in discovery central to their claims before the court could test the merits of their case.

¶ 6 Seeking to promote efficiency in what it determined to be a "complex toxic tort action involving numerous claims," the trial court issued a modified case management order. The order provided for evaluating the merits of the case at an early stage, requiring a prima facie showing—through expert opinions in the form of affidavits, studies and reports, and medical records—of each plaintiff's exposure to toxic chemicals as a result of Antero Resources' activities, as well as evidence of causation specific to those toxins for each plaintiff. It also required identification and quantification of the contamination of the Strudleys' real property attributable to the companies' operations. The order prohibited the Strudleys from conducting discovery until they made this prima facie showing of exposure and medical causation for each plaintiff.

¶ 7 Specifically, the modified case management order required the Strudleys to provide, within 105 days:

i. Expert opinion[s] provided by way of sworn affidavit[s], with supporting data and facts in the form required by [C.R.C.P.] 26(a)(2)(B)(I), that establish *for each Plaintiff* (a) the identity of each hazardous substance from Defendants' activities to which he or she was exposed and which Plaintiff claims caused him or her injury; (b) whether any and each of these substances can cause the type(s) of disease or illness that Plaintiffs claim (general causation); (c) the dose or other quantitative measurement of the concentration, timing and duration of his/her exposure to each substance; (d) if other than the Plaintiffs' residence, the precise location of any exposure; (e) an identification, by way of reference to a medically recognized diagnosis, of the specific disease or illness from which each Plaintiff allegedly suffers or for which medical monitoring is purportedly necessary; and (f) a conclusion that such illness was in fact caused by such exposure (specific causation).

ii. Each and every study, report and analysis that contains any finding of contamination on Plaintiffs' property or at the point of each Plaintiffs' claimed exposure.

iii. A list of the name and last known address and phone number of each health care provider who provided each Plaintiff with health services along with a release authorizing the health care providers to provide Plaintiffs' and Defendants' counsel with all of each Plaintiff's medical records, in the form of Exhibit A hereto, within twenty-one days of the date of this Court's entry of this Modified Case Management Order.

iv. Identification and quantification of contamination of the Plaintiffs' real property attributable to Defendants' operations.

The trial court noted that its requirement did not prejudice the Strudleys "because ultimately they will need to come forward with this data and expert opinions in order to establish their claims."

¶ 8 In response to the modified case management order, the Strudleys provided a variety of maps, photos, medical records, and air and water sample analysis reports. Additionally, the Strudleys submitted a letter from John G. Huntington, Ph.D. ("Dr. Huntington"), about the results of a water sample test conducted on December 7, 2011—nearly

a year after the Strudleys had moved. Dr. Huntington stated that the water contained chemicals in amounts above the recommended concentrations but did not make conclusions as to the danger of the amounts or whether the chemicals caused the alleged injuries. The Strudleys also submitted an affidavit from Thomas L. Kurt, MD, MPH ("Dr. Kurt"), who, based on a description of the family's symptoms and color photographs of rashes and bloody noses,[2] concluded that sufficient evidence existed to warrant further investigation. Dr. Kurt did not render an opinion as to whether chemical exposure caused the alleged injuries. The Strudleys did not provide an expert opinion concluding that they had been exposed to dangerous chemicals or that Antero Resources' conduct caused the alleged injuries and harm to the property.

¶ 9 Subsequently, Antero Resources filed a motion to dismiss, or in the alternative, for summary judgment, asserting that the Strudleys failed to comply with the modified case management order. The trial court granted the motion, rejecting the Strudleys' showing as insufficient and dismissing the action with prejudice—presumably under C.R.C.P. 37, although the trial court did not cite any rule of civil procedure. In its analysis, the trial court relied heavily on *Lore v. Lone Pine Corp.*, the namesake unpublished opinion that created this type of modified case management order.

¶ 10 The Strudleys appealed. The court of appeals concluded that the trial court had exceeded its authority as a matter of law by issuing the *Lone Pine* order and that in the alternative the trial court erred by entering the *Lone Pine* order under the circumstances of this case. The court of appeals reversed the trial court's *Lone Pine* order along with the order of dismissal and reinstated the Strudleys' claims. *Strudley v. Antero Res. Corp.*, 2013 COA 106, ¶ 42, —— P.3d ——. We granted certiorari to resolve whether our Rules of Civil Procedure authorize the use of *Lone Pine* orders and, if so, whether the trial

court in this case acted within its discretion in entering and enforcing such an order.

¶ 11 "A court's authority to act derives from rule, statute, case law, or the inherent authority of courts." *See Tulips Invs., LLC v. State ex rel. Suthers*, 2015 CO 1, ¶ 23, 340 P.3d 1126, 1133. Our task in this case is to examine these sources to evaluate whether a trial court has authority to issue a modified case management order requiring a plaintiff to establish a prima facie case before discovery has taken place.

¶ 12 We begin with the history of *Lone Pine* orders and explain that the federal courts that impose this type of order acquire their authority to do so from the express language of Federal Rule of Civil Procedure 16(c). We then make clear that authority interpreting a federal rule is persuasive only when the Colorado rule is similar. Through a comparison of C.R.C.P. 16 and Fed. R.Civ.P. 16, we highlight the differences in the provisions. We also consider C.R.C.P. 16 within the context of our other rules of civil procedure and then examine our prior case law interpreting the relevant Colorado rules. We conclude that C.R.C.P. 16(c) does not currently authorize a trial court to impose a *Lone Pine* order.

## II.

¶ 13 We hold that Colorado's Rules of Civil Procedure do not allow a trial court to issue a modified case management order, such as a *Lone Pine* order, that requires a plaintiff to present prima facie evidence in support of a claim before a plaintiff can exercise its full rights of discovery under the Colorado Rules. Although the comments to C.R.C.P. 16 promote active judicial case management, the rule does not provide a trial court with authority to fashion its own summary judgment-like filter and dismiss claims during the early stages of litigation.

### A. Standard of Review

¶ 14 Whether the Colorado Rules of Civil Procedure allow trial courts to enter

---

**2.** The Strudleys did not present any medical documentation of their physical injuries because no doctor had examined them at the time of their injuries. Dr. Kurt's affidavit also lacked such documentation because he did not physically examine the Strudleys.

modified case management orders requiring plaintiffs to produce evidence essential to their claims—after initial disclosures but before fully exercising their discovery rights under the rules—is a question of law we review de novo. *See City & Cnty. of Broomfield v. Farmers Reservoir & Irrigation Co.*, 239 P.3d 1270, 1275 (Colo.2010) ("We review the trial court's interpretation of a rule of civil procedure de novo because it presents a question of law."). A misapplication of the law constitutes an abuse of discretion. *Freedom Colo. Info., Inc. v. El Paso Cnty. Sheriff's Dep't*, 196 P.3d 892, 899 (Colo.2008).

¶ 15 We construe the Colorado Rules of Civil Procedure "liberally to effectuate their objective to secure the just, speedy, and inexpensive determination of every case and their truth-seeking purpose." *DCP Midstream, LP v. Anadarko Petroleum Corp.*, 2013 CO 36, ¶ 24, 303 P.3d 1187, 1193. At the same time, we must interpret a rule of procedure according to its commonly understood and accepted meaning. *Leaffer v. Zarlengo*, 44 P.3d 1072, 1078 (Colo.2002). Words and provisions should not be added to a rule, and the inclusion of certain terms in a rule implies the exclusion of others. *People v. Shell*, 148 P.3d 162, 178 (Colo.2006).

## B. *Lone Pine* Orders

¶ 16 *Lone Pine* orders evolved from an unpublished order of the Superior Court of New Jersey. *See Lone Pine*, 1986 WL 637507. Under the Federal Rules, such orders are designed to manage complex issues and mitigate potential burdens on defendants and the court during the course of litigation. *Acuna*, 200 F.3d at 340. Colorado appellate courts have never authorized their use. In contrast, federal courts rely on Fed.R.Civ.P. 16(c)(2)(L) as authority to "adopt[ ] special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." *See, e.g., In re Digitek Prod. Liab. Litig.*, 264 F.R.D. 249, 255 (S.D.W.Va.2010); *In re Vioxx Prods. Liab. Litig.*, 388 Fed.Appx. 391, 397 (5th Cir.2010); *McMunn v. Babcock & Wilcox Generation Grp., Inc.*, 896 F.Supp.2d 347, 351 (W.D.Pa.2012); *McManaway v. KBR, Inc.*, 265 F.R.D. 384, 385 (S.D.Ind. 2009). The federal courts have discretion to use such orders in complex cases when discovery would likely be challenging, protracted, and expensive. *See Roth v. Cabot Oil & Gas Corp.*, 287 F.R.D. 293, 297 n. 3 (M.D.Pa. 2012); *see, e.g., Acuna*, 200 F.3d at 340 (authorizing Lone Pine orders in a case involving 1600 plaintiffs suing over 100 defendants for a range of injuries occurring over a forty-year period).

¶ 17 Federal courts considering whether to issue *Lone Pine* orders seek to balance efficiency and equity. A court may decline to issue a *Lone Pine* order even in a complex case when other procedural devices can accommodate the unique issues of the litigation. *See, e.g., Digitek*, 264 F.R.D. at 259 ("Given a choice between a '*Lone Pine* order' created under the court's inherent case management authority and available procedural devices such as summary judgment, motions to dismiss, motions for sanctions and similar rules, [we find] it more prudent to yield to the consistency and safeguards of the mandated rules...."). Or it may decide to issue a *Lone Pine* order after extensive discovery. *See Vioxx*, 388 Fed.Appx. at 397 (noting that after ten years and millions of pages of discovery, "it is not too much to ask a plaintiff to provide some kind of evidence to support [his or her] claim").

¶ 18 Only a handful of state courts have issued *Lone Pine* or similar orders, citing to various sources of authority.[3] Even in juris-

---

3. *See, e.g., Cottle v. Superior Court*, 3 Cal.App.4th 1367, 5 Cal.Rptr.2d 882 (1992) (holding that, under the California Constitution, a trial court may use its inherent powers to manage complex tort litigation by ordering the exclusion of expert evidence if the plaintiff is unable to establish a prima facie case after complete discovery but before trial); *Atwood v. Warner Elec. Brake & Clutch Co.*, 239 Ill.App.3d 81, 179 Ill.Dec. 18, 605 N.E.2d 1032 (1992) (holding that both the order requiring plaintiffs to identify their claims and causally relate them to the cause of action and the subsequent summary judgment were appropriate after five years of discovery); *In re Love Canal Actions*, 145 Misc.2d 1076, 547 N.Y.S.2d 174 (Sup.Ct.1989) (upholding a *Lone Pine* order based on the court's inherent power granted in N.Y.Code Civil Practice Law and Rule 3101(a), as well as *Lone Pine*, explaining that exposure, injury, and causation are "material

dictions where state courts have authority to issue *Lone Pine* orders, their use at an early stage of discovery may constitute an abuse of discretion. *Simeone v. Girard City Bd. of Educ.*, 171 Ohio App.3d 633, 872 N.E.2d 344, 351–52 (2007) (holding that the trial court abused its discretion by entering a *Lone Pine* order before giving plaintiffs "the full range and benefit of discovery").

## C. Comparison of C.R.C.P. 16 and Fed.R.Civ.P. 16

■ ¶ 19 While many revised Colorado Rules are patterned from Federal Rules, revised C.R.C.P. 16 contains critical differences from Fed.R.Civ.P. 16. *See* C.R.C.P. 16, Comm. Cmt., History and Philosophy ("Revisions to Rules 26, 29, 30, 31, 32, 33, 34, 36, and 37 are patterned after December 1, 1993, revisions to Federal Rules of the same number, but are not in all respects identical."). When a Colorado Rule is modeled on a Federal Rule of Civil Procedure, we look to federal authority for guidance in construing the Colorado rule. *Benton v. Adams*, 56 P.3d 81, 86 (Colo.2002); *see, e.g., United Bank of Denver Nat'l Ass'n v. Shavlik*, 189 Colo. 280, 541 P.2d 317, 318 (1975) (deeming the authority and commentators on Fed. R.Civ.P. 14 to be persuasive because C.R.C.P. 14 is virtually identical).

¶ 20 Fed.R.Civ.P. 16(c)(2) states, in relevant part:

Matters for Consideration. *At any pretrial conference, the court may consider and take appropriate action on the following matters:*

(A) formulating and simplifying the issues, and eliminating frivolous claims or defenses;

. . . .

(L) *adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems;*

. . . .

(P) facilitating in other ways the just, speedy, and inexpensive disposition of the action.

(Emphasis added.)

¶ 21 By comparison, C.R.C.P. 16 does not include the Federal Rule provisions:

(c) Modified Case Management Order. Any of the provisions of section (b) of this Rule may be modified by the entry of a Modified Case Management Order pursuant to this section and section (d) of this Rule. If a trial is set to commence less than 182 days (26 weeks) after the at-issue date as defined in C.R.C.P. 16(b)(1), and if a timely request for a modified case management order is made by any party, the case management order shall be modified to allow the parties an appropriate amount of time to meet case management deadlines, including discovery, expert disclosures, and the filing of summary judgment motions. The amounts of time allowed shall be within the discretion of the court on a case-by-case basis.

. . . .

(2) Disputed Motions for Modified Case Management Orders. If any party wishes to move for a Modified Case Management Order, lead counsel and any unrepresented parties shall confer and cooperate in the development of a proposed Modified Case Management Order. A motion for a Modified Case Management Order and one form of the proposed Order shall be filed no later than 42 days after the case is at issue. To the extent possible, counsel and any unrepresented parties shall agree to the contents of the proposed Modified Case Management Order but any matter upon which all parties cannot agree shall be designated as "disputed" in the proposed Modified Case Management Order. The proposed Order shall contain specific alternate provisions upon which agreement could not be reached and shall be supported by specific showing of good cause for each modification sought including,

and necessary" in these actions, and affirming dismissal for failure to comply with the order); *Adjemian v. Am. Smelting & Ref. Co.*, No. 08-00-00336-CV, 2002 WL 358829 (Tex.Ct.App. Mar. 7, 2002) (holding that a trial court has authority to make and enforce *Lone Pine* orders in handling all pretrial matters under Tex.R. Civ. P. 166, as well as to impose sanctions for parties that fail to comply).

where applicable, the grounds for good cause pursuant to C.R.C.P. 26(b)(2). Such motion only needs to set forth the proposed provisions which would be changed from the presumptive case management Order set forth in section (b) of this Rule. The motion for a modified case management order shall be signed by lead counsel and any unrepresented parties, or shall contain a statement as to why it is not so signed.

¶ 22 Thus, in revising C.R.C.P. 16 in 2002, we did not adopt a counterpart to Fed. R. Civ. P. 16(c), which explicitly grants trial courts substantial discretion to adopt procedures to streamline complex litigation in its early stages, "[a]t any pretrial conference." Of importance here, Fed.R.Civ.P. 16(c)(2)(L) authorizes trial courts to "consider and take appropriate action" by "adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." In addition, Fed.R.Civ.P. 16(c)(2)(A) grants trial courts authority to "formulat[e] and simplify[ ] the issues, and eliminat[e] frivolous claims or defenses." More generally, Fed.R.Civ.P. 16(c)(2)(P) authorizes trial courts to "facilitat[e] in other ways the just, speedy, and inexpensive disposition of the action."

¶ 23 The language of C.R.C.P. 16 is markedly different from the language of Fed. R.Civ.P. 16. On its face, C.R.C.P. 16 does not contain a grant of authority for complex cases or otherwise afford trial courts the authority to require a plaintiff to make a prima facie showing before the plaintiff fully exercises discovery rights under the Colorado Rules. Instead, C.R.C.P. 16 primarily addresses basic scheduling matters. For instance, C.R.C.P. 16(b) creates a timeline of key trial-related events applicable to presumptive case management orders, including the "at issue date" for purposes of calculating deadlines; "meet and confer" date for counsel; trial setting; service of C.R.C.P. 26(a)(1) initial disclosures; disclosure of expert testimony in accordance with C.R.C.P. 26(a)(2); timing of initial settlement discussions; deadlines for joining additional parties, amending pleadings, and filing pretrial motions; and discovery schedule. C.R.C.P. 16(c) accords the parties and the trial court flexibility to modify the presumptive order upon a showing of good cause "to allow the parties an appropriate amount of time to meet case management deadlines, including discovery, expert disclosures, and the filing of summary judgment motions." Rule 16(c) concludes by stating that *"[t]he amounts of time allowed shall be within the discretion of the court* on a case-by-case basis"—indicating that any modifications would relate to time and schedule. *See* C.R.C.P. 16(c) (emphasis added).

¶ 24 Neither subsection 16(b) nor 16(c) of our rules addresses a party's disclosure or discovery obligations beyond establishing deadlines and referencing C.R.C.P. 26, which contains general provisions governing discovery and disclosure. Comments to the revised Rule 16 explain that its purpose is "to accomplish early purposeful and reasonably economical management of cases by the parties with court supervision," as well as "to insure that only appropriate discovery is conducted and to carefully plan for and conduct an efficient and expeditious trial." C.R.C.P. 16, Comm. Cmt., Operation; *see also id.* (explaining that Rule 16 was amended to "emphasize and foster professionalism and to deemphasize sanctions for non-compliance"). In the context of explaining Rule 16's goal of eliminating " 'hide-the-ball' and 'hardball' tactics" and to curtail abuses of the rules, the comments emphasize that trial judges are expected to "assertively lead the management of cases to ensure that justice is served." *Id.*

¶ 25 Despite our exclusion of Fed.R.Civ.P. 16(c) language that provides authority for *Lone Pine* orders, Antero Resources argues that revised C.R.C.P. 16 allows a Colorado court to weed out and dismiss claims at an early stage of litigation under its case management authority before full discovery. It bases this contention not on the language of our rule but on a portion of the comment reciting that a purpose of the revised rule is to accomplish "early purposeful and reasonably economical management of cases." However, this goal in no way substitutes for the kind of explicit authorization the federal rules provide for issuance of *Lone Pine* or-

ders. In Colorado, case management orders under our Rule 16, whether presumptive or modified, are instruments courts employ to streamline litigation and ensure a just progression of a case. We amended the rule to "emphasize and foster professionalism and to de-emphasize sanctions for non-compliance," purposefully leaving adequate enforcement provisions in place. C.R.C.P. 16, Comm. Cmt., Operation. Indeed, an additional stated purpose of C.R.C.P. 16 is "to ... encourage[ ] ... cooperation among counsel and parties to facilitate disclosure, discovery, pretrial and trial procedures." C.R.C.P. 16(a).

¶ 26 Together with amended Rule 26, our amended Rule 16 provides a tool for the court to manage discovery while efficiently advancing the litigation toward resolution, reflecting the development away from the seemingly unrestricted discovery that courts often endorsed in the past. Rule 16 does not, however, authorize a trial court to condition discovery upon the plaintiff establishing a prima facie case. In sum, when revising Rule 16 in 2002, we did not pattern our rule on Fed.R.Civ.P. 16(c), and we decline to invoke a rule comment as authority for issuance of *Lone Pine* orders.[4]

### D. Other Colorado Rules of Civil Procedure

¶ 27 Colorado Rules of Civil Procedure other than Rule 16 allow trial courts to dispose of non-meritorious claims and issue sanctions for abuses. For example, C.R.C.P. 11 allows a trial court to sanction attorneys and their clients for filing pleadings that are not "well grounded in fact" or "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law," or pleadings that are "interposed for any improper purpose." C.R.C.P. 12(b)(5) allows a court to dismiss a claim for "failure to state a claim upon which relief can be granted." C.R.C.P. 56 allows defendants to challenge the sufficiency of a claim before trial through a motion for summary judg-

ment. Additionally, expert disclosures required under Rule 26(a)(2) and all of the discovery-related rules, especially Rules 30, 33, 34, and 36, ensure that the discovery process operates within clearly defined limits. Likewise, Rule 37 allows a trial court to sanction a party for failure to make a disclosure or cooperate in discovery.

¶ 28 Comments to Rule 16 expressly state that some of these rules—"Colorado Rules 16, 26, 29, 30, 31, 32, 33, 34, 36, and 37"— "were developed to interrelate with each other to provide a differential case management/early disclosure/limited discovery system designed to resolve difficulties experienced with prior approaches." C.R.C.P. 16, Comm. Cmt., History and Philosophy. Thus, Colorado trial courts have a range of tools other than *Lone Pine* orders by which to actively manage cases.

### E. Colorado Case Law

¶ 29 Recently, we reviewed Colorado's amended rule of civil procedure, C.R.C.P. 26(b), in *DCP Midstream*, 2013 CO 36, 303 P.3d 1187. There, we analyzed the scope of a party's right to discovery, explaining that the changes to the rules, including to C.R.C.P. 16, "reflect a growing effort to require active judicial management of pretrial matters" to reduce the cost of litigation. *Id.* at ¶ 27, 303 P.3d at 1194. We construed the amended rules as narrowing the scope of discovery that parties are entitled to conduct. *Id.* at ¶¶ 28, 32, 303 P.3d at 1194, 1196. We held that C.R.C.P. 16 and 26 require a court to exercise control over discovery to prevent unnecessary or abusive discovery. *Id.* at ¶¶ 27, 32, 34, 303 P.3d at 1194, 1196.

¶ 30 Although we referenced Rule 16 as illustrative of this principle, the clear focus of *DCP Midstream* was amended C.R.C.P. 26(b) and the scope of discovery. We characterized discovery as falling within two tiers (attorney-managed and court-managed), and we emphasized that per the 2002 amendments, active judicial management of discov-

---

4. Even in federal jurisdictions that have approved the imposition of a *Lone Pine* order, poorly pled and facially weak complaints do not always necessitate a *Lone Pine* order. *See Roth*, 287 F.R.D. at 299 (holding a *Lone Pine* order was not appropriate before the initiation of discovery, despite defendant's contention that the claims were inadequately pled and would ultimately fail).

ery is vital to prevent inappropriately broad discovery. *Id.* at ¶¶ 28–29, 303 P.3d at 1196; *see also id.* at ¶ 6, 303 P.3d at 1190 ("[T]he [2002] amendments are intended to narrow the scope of permissible discovery available to parties as a matter of right and to require active judicial management when a party objects that the discovery sought exceeds that scope."). We spoke in terms of "tailoring" discovery. *See, e.g., id.* at ¶¶ 9, 35, 37, 303 P.3d at 1191, 1197. Nowhere did we identify–or authorize–an additional obligation for plaintiffs to establish a prima facie case before exercising rights to discovery under the rules.

¶ 31 *DCP Midstream* is consistent with our previous acknowledgment that the rules vest trial courts with discretion to manage discovery in a way that balances competing goals: endeavoring to reduce discovery costs, simplify the issues, and promote expeditious settlement of cases, while also promoting the discovery of relevant evidence. *See Cardenas v. Jerath*, 180 P.3d 415, 420–21 (Colo. 2008); C.R.C.P. 26.

¶ 32 We examined Rule 16 closely in *Curtis, Inc. v. District Court*, 186 Colo. 226, 526 P.2d 1335 (1974) and *Direct Sales Tire Co. v. District Court*, 686 P.2d 1316 (Colo.1984). We addressed—and limited—a trial court's ability to require the plaintiff to present prima facie evidence of a claim prior to compelling a defendant to engage in discovery. In *Curtis*, we considered whether a plaintiff was entitled to inspect various documents related to the defendant's business. 526 P.2d at 1335. There, we concluded that the Rules of Civil Procedure did not require the plaintiff to produce prima facie evidence before discovery and that such a requirement undermined the general policy that discovery disputes should be resolved in favor of disclosure. *Id.* at 1339. Similarly, in *Direct Sales*, we looked at whether the plaintiff was entitled to certain financial information upon the mere filing of an unfair competition complaint. 686 P.2d at 1319. We held that, except where privilege applies, a plaintiff is entitled to the information, and it would be an abuse of discretion to require the plaintiff to establish a prima facie case of liability. *Id.* at 1320–21. Further, we emphasized

that "the adoption of a prima facie case requirement would be contrary to the basic principles governing discovery," namely that "[d]iscovery rules should be construed liberally to effectuate the full extent of their truth-seeking purpose" and "[i]n close cases, the balance must be struck in favor of allowing discovery." *Id.* at 1321.

¶ 33 In light of these cases, had we intended revised Rule 16 to institute a prima facie case showing akin to a *Lone Pine* order, we would have explicitly patterned our revised rule after Fed.R.Civ.P. 16(c).

### F. Application to This Case

¶ 34 This case involves only four family members, four defendants, and one parcel of land, yet the trial court labeled it a "complex toxic tort action." We agree with the court of appeals that "this case is not as complex as cases in other jurisdictions in which *Lone Pine* orders were issued." *See Strudley*, ¶¶ 36, 37. Nevertheless, the trial court deemed a *Lone Pine* order necessary and appropriate "to streamline discovery and make the pre-trial efforts of the parties and the [c]ourt more efficient." Also, in its modified case management order, the trial court made clear that focusing on the Strudleys' "admissible evidence concerning exposure and causation" might "*eliminate* or sharply curtail this case" (emphasis added). With this threat looming, and without the benefit of fully exercising their right to discovery under the rules, the Strudleys submitted evidence to the trial court in an attempt to comply with the order. The trial court compared that evidence with the evidence submitted in *Lone Pine* and concluded that the same "adequacy issues" plagued both cases.

¶ 35 But because no statute, rule, or past Colorado case recognizes authority for trial courts to enter *Lone Pine* orders, we conclude that the trial court lacked authority to enter a *Lone Pine* order in this case. Whether presumptive or modified, case management orders under Rule 16 are instruments courts employ to streamline litigation and ensure the just progression of a case–not to eliminate claims or dismiss a case independent of mechanisms for eliminating claims and dismissing cases under the rules. We

share the concerns of other courts that have found *Lone Pine* orders unauthorized by their existing rules. *See, e.g., Simeone,* 872 N.E.2d at 350 (recognizing that the *Lone Pine* order "has faced harsh criticism because it gives courts the means to ignore existing procedural rules and safeguards"). Indeed, if a *Lone Pine* order cuts off or severely limits the litigant's right to discovery, the order closely resembles summary judgment, albeit without the safeguards supplied by the Rules of Civil Procedure. *Id.* In Colorado, existing rules and procedural safeguards provide sufficient protection against frivolous or unsupported claims and burdensome discovery. Like the court in *Roth,* "we find it preferable to yield to the consistency and safeguards of the [rules of civil procedure], as well as the [c]ourt's own flexibility and discretion to address discovery disputes as they arise, as opposed to entering [a] rigid and exacting *Lone Pine* order." 287 F.R.D. at 299–300 (internal quotation marks and citations omitted); *accord Digitek,* 264 F.R.D. at 259.

■■■ ¶ 36 The Colorado Rules of Civil Procedure grant courts flexibility and discretion to address discovery disputes as they arise. But this judicial authority is limited; it does not allow a court to require a plaintiff to establish a prima facie case in the early stages of litigation while simultaneously barring discovery that might expose the very support sought to prove a claim. C.R.C.P. 16 does not currently authorize *Lone Pine* orders.[5] Interpreting Rule 16 to allow *Lone Pine* orders would interfere with the rights provided to litigants and produce consequences unintended by our rules by forcing dismissal before affording plaintiffs the opportunity to establish the merits of their cases.

### III.

¶ 37 Accordingly, we affirm the judgment of the court of appeals.

JUSTICE BOATRIGHT dissents.

JUSTICE BOATRIGHT, dissenting.

¶ 38 Active case management by the judge is essential to running an efficient docket and administering justice. The rules encourage it, and caselaw, at times, demands it. Yet, today the majority taps the brakes on active case management and sends the message that unless the rules specifically authorize a docket management technique, judges lack the authority to use it in handling their cases. In my view, the modified case management order (MCMO) at issue in this case was expressly authorized by the plain language of Colorado Rule of Civil Procedure 16, which allows trial courts to adjust the timelines for disclosures and discovery. Because Rule 16 allows for these modifications, I do not believe that it is necessary for the rule to expressly state that trial courts have the authority to issue *Lone Pine* orders. Accordingly, I would hold that Rule 16 provided the trial court with the authority to issue the MCMO in this case, and I respectfully dissent.

¶ 39 The trial court's MCMO required the Strudleys to provide contamination reports from their property, medical records, and expert affidavits establishing exposure and causation before they could engage in discovery. As the trial court noted, the information required by the MCMO composed the basic foundation of the Strudleys' case against Antero Resources, and they would have had to produce it in order to make their case at trial. Because the Strudleys would have had to furnish these pieces of information even if the trial court had never issued the MCMO, in my view, the MCMO simply accelerated the timeline for the Strudleys to disclose records and expert testimony and delayed the timeline for when the Strudleys could engage in full discovery.

¶ 40 Rule 16 expressly authorizes the trial court to make these modifications to the timelines for disclosures and discovery. Rule 16(c) states that "any of the provisions of section (b) . . . may be modified by the entry

---

**5.** Our regular procedure for amending the civil rules to make amendments patterned on a federal rule is for the Civil Rules Committee to first examine the issue and make a recommendation to the court. We consider it inadvisable to import *Lone Pine* orders into our rules absent such consideration.

of a Modified Case Management Order." C.R.C.P. 16(c). And among the modifiable rules in 16(b) are provisions governing disclosures and discovery. Specifically, Rule 16(b)(5) states the presumptive rule that "[t]he parties shall disclose expert testimony in accordance with C.R.C.P. 26(a)(2)," which defines the form, content, and timing of expert testimony disclosures. C.R.C.P. 16(b)(5). Rule 16(c) thus authorizes the trial court, in its discretion, to enter an MCMO that changes the substance of what must be included in expert disclosures and the timing of when they must be provided to the other side. This provides ample justification for the trial court's requirement that the Strudleys disclose records and expert testimony at an earlier time in the case. Rule 16(b)(10) also states the presumptive rule that "discovery may commence 42 days after the case is at issue." C.R.C.P. 16(b)(10). Thus, Rule 16(c) empowers the trial court to modify the timeline for when discovery commences. In my view, the trial court's MCMO in this case was simply the trial court exercising its discretionary authority to modify these Rule 16(b) provisions, thus moving up the time for disclosures and moving back the time for the commencement of discovery.

¶ 41 The cases cited by the majority do not compel a different result. While it is true that this court in *Curtis, Inc. v. District Court*, 186 Colo. 226, 526 P.2d 1335 (1974), and *Direct Sales Tire Co. v. District Court*, 686 P.2d 1316 (Colo.1984), reversed the trial court for issuing *Lone Pine* orders, these cases were decided under antiquated versions of Rule 16 and Rule 26, and they are factually distinguishable from the present case.

¶ 42 At the time that *Curtis* and *Direct Sales* were decided, this court had not yet amended Rule 16 to give trial courts the authority to issue MCMOs. *Compare* C.R.C.P. 16 (1973) (lacking a section authorizing trial courts to issue MCMOs), *and* C.R.C.P. 16 (1984) (same), *with* C.R.C.P. 16 (2002) (including a section authorizing trial courts to issue MCMOs). As such, when the court rendered those decisions, there was no language in Rule 16 giving trial courts the ability to change the timeline for disclosures and discovery. The 2002 amendments to Rule 16, however, expressly authorized trial courts to make these changes. C.R.C.P. 16(c) (2002).

¶ 43 The facts of *Curtis* and *Direct Sales* are also distinguishable from this case. The information that the MCMO required the Strudleys to produce was entirely within their possession or control; they had to demonstrate that their own land had been contaminated, that they had been exposed to chemicals, and that they currently suffered from an illness. This is markedly different from the situation this court confronted in *Curtis* and *Direct Sales*. In those cases, the plaintiffs were unable to make the required prima facie showing because they needed information from the defendants in order to do so. *Curtis*, 526 P.2d at 1336 (plaintiffs alleged that defendants copied their recordkeeping methods, and they needed the defendants' records to establish a prima facie case); *Direct Sales*, 686 P.2d at 1317, 1320 (plaintiffs alleged that defendants were selling gasoline at prices below cost, and they needed the defendants' cost of doing business in order to make their prima facie case).

¶ 44 Understandably, this court was sympathetic to those plaintiffs, who were asked to do the impossible and make a prima facie case when they could do so only with information that was exclusively in the defendants' control. This was not the situation in the Strudleys' case for two reasons: first, the information they had to produce was within their possession or control, and second, the Strudleys benefitted from the 1994 amendments to Rule 26, pursuant to which Antero Resources provided roughly 50,000 pages of initial disclosures at the outset of this case. C.R.C.P. 26, Comm. Cmt., Federal Committee Notes (stating that the most dramatic change of the 1994 amendments was the addition of a disclosure system whereby parties must disclose information without receiving a discovery demand). For the foregoing reasons, it is my view that *Curtis* and *Direct Sales* are distinguishable from the case at hand, and this court should use the current text of Rule 16 to hold that trial courts are authorized to modify the timelines for disclosures and discovery.

¶ 45 The Committee Comments to Rule 16 demonstrate the soundness of this reading. The Committee emphasized that it intended Rule 16 to be flexible by stating that: "Rule[ ] 16 ... should work well in most cases filed in Colorado District Courts. However, where a case is complex or requires special treatment, the Rules provide flexibility so that the parties and Court can alter the procedure." C.R.C.P. 16, Comm. Cmt., Operation. Thus, the Committee expressed its intent that trial courts have the flexibility to modify the provisions of Rule 16 when issues are complex and when the standard rules do not fit the needs of the case. The Committee also stated its desire to have trial courts take an active role in the discovery process, providing that "[i]t is expected that trial judges will assertively lead the management of cases to ensure that justice is served." *Id.*

¶ 46 Cases from this court have echoed the same principles. In *DCP Midstream, LP v. Anadarko Petroleum Corp.*, for example, this court analyzed the Committee's 2002 changes to Rules 16 and 26, noting that these two rules had evolved to encourage active judicial management in pre-trial matters. 2013 CO 36, ¶ 27, 303 P.3d 1187, 1194. And in *Burchett v. South Denver Windustrial Co.*, we instructed trial courts to treat cases according to their specific needs and not feel obligated to impose caseflow management plans that treat all cases the same. 42 P.3d 19, 21 (Colo.2002). The majority today, however, sends a different message to trial courts, telling them that if a specific case management technique is not explicitly provided for in the text of Rule 16, then it is outside the scope of their authority to manage the cases in their dockets. I disagree because I believe the plain language of Rule 16 authorizes trial courts to issue these orders and that this reading best comports with our obligation to liberally construe the rules in order to achieve their objectives. *DCP Midstream*, ¶ 24, 303 P.3d at 1193.

¶ 47 I am sympathetic to the majority's concerns that, in certain situations, *Lone Pine* orders could create a catch–22 whereby the order would prevent a plaintiff from acquiring the very information he needs to establish a prima facie case. But this is simply not the situation in this case. The only information the MCMO required the Strudleys to produce was proof that their own land had been contaminated, that they had been exposed to chemicals, and that these chemicals caused them to suffer injuries. This information was so central to their claims against Antero Resources that the Strudleys should have had it before even filing their case. Accordingly, there is nothing inequitable about adhering to the plain language of Rule 16 and holding that the trial court was authorized to enter the MCMO in this case.

¶ 48 I would also uphold the trial court's dismissal of the Strudleys' case for their failure to comply with the MCMO. Although this sanction was severe, Rule 37(b)(2) authorizes trial courts to enter "such orders ... as are just" when a party fails to obey a discovery order, and this includes "dismissing the action or proceeding or any part therefore," C.R.C.P. 37(b)(2)(C). As we have previously noted, Rule 37 was written broadly to give trial courts the discretion to choose what sanctions to threaten in order to ensure compliance with discovery orders. *Kwik Way Stores, Inc. v. Caldwell*, 745 P.2d 672, 677 (Colo.1987) ("Requiring a finding of willfulness as a condition precedent to default would vitiate much of the discretion which C.R.C.P. 37(d) intended to repose in the trial court for abuse or disregard of the discovery process."). We have instructed trial courts that in selecting sanctions, they should exercise their discretion to "impos[e] a sanction which is commensurate with the seriousness of the disobedient party's conduct." *Id.*

¶ 49 The trial court acted within its discretion when it dismissed the Strudleys' case. The Strudleys failed to establish a prima facie case of exposure, injury, and causation as was required by the trial court's MCMO. Their failure came despite the fact that the Strudleys had all of the required information in their possession or control. In the face of this failure of proof, I believe that the trial court acted within its discretion in dismissing

the case and not forcing Antero Resources to go forward defending claims that the Strudleys were unable to even minimally substantiate.

¶ 50 For the foregoing reasons, I would uphold the trial court's entry of the MCMO and its subsequent order ·dismissing the Strudleys' case. I respectfully dissent.